JESSE SAMMIS, Appellant, *v.* HUGH McLAUGHLIN, Respondent.

Where the husband permits, without objection, his wife to hold herself out
   before the world as transacting business on her sole and separate account,
   although he may advance money to her in her business, the title to property
   purchased therewith, as against the husband, vests in the wife.

The wife kept a boarding-house, and lived separate and apart from her husband
   for several years, and carried on the business in her own name: she mort-
   gaged her furniture to secure payment for a part of the same; failing to pay
   the mortgage, the property passed into the hands of the mortgagee: the
   husband replevied the property, claiming that it was purchased with his
   money, or money he had furnished the wife: *Held*, that having permitted the
   wife to transact business in her own name, and to deal with the property as
   her own, the husband was estopped from setting up any claim to the same
   against the mortgagee of the wife.

DAVIES, Ch. J.    This action was brought to recover the
possession of certain personal property enumerated in the com-
plaint.    The plaintiff was a married man, and was living at
Huntington, Suffolk county.    His wife, Almira Sammis,
with his consent, left him in the spring of 1853, and removed
to the city of Brooklyn, where she opened a boarding house,
and carried on the same until the year 1860, as a feme sole,
when the plaintiff moved to Brooklyn, and he and his wife
again lived together.    It appeared, on the trial, that the
plaintiff let his wife have, on leaving Huntington, some
furniture to keep boarding house with, and she kept such
boarding house for the period of seven years.    The plaintiff
testified that all the furniture in the houses kept by his wife
belonged to him ; that some of it was brought from Hunt-
ington, and the rest he either purchased for her or gave her
money to buy it with.    It appeared that, in the spring of
1857, Mrs. Sammis, wishing to remove to another house,
purchased from a Mrs. Strong the gas fixtures, the chandeliers
and all the grates in the parlors of the houses Nos. 105 and
107 Pineapple street, Brooklyn, to which houses Mrs. Sammis
removed in the spring of 1857, and occupied the same as a
boarding house until the spring of 1860.    The grates, &c.,
amounted to the sum of $600, and she also purchased of Mrs.

Strong a piano, for the price of $200, making in all the sum of $800. To secure this sum she gave to Mrs. Strong a chattel mortgage on all the property mentioned in the schedule annexed thereto, described as then being in the house No. 45 Concord street, and about to be removed to the premises Nos. 105 and 107 Pineapple street. It is not necessary further to refer to this mortgage, as another one was given on the 1st day of May, 1858, and under which the defendant, as the agent of Mrs. Strong, had possession of the goods, &c., mentioned in the complaint, and claims to hold the same. It would appear that, on this latter day, the indebtedness of Mrs. Sammis to Mrs. Strong had been reduced to $600. On the 1st of May, 1858, Mrs. Sammis executed a chattel mortgage to Mrs. Strong to secure said balance of $600, upon certain goods, &c., therein described, as then being in the house and premises Nos. 105 and 107 Pineapple street, Brooklyn, and which articles were mainly those enumerated in the previous mortgage, and in addition, the rosewood piano, purchased by Mrs. Sammis of Mrs. Strong the spring previous.

The mortgage was given to secure the sum of $600—$100 to be paid on the 1st of July, then next—$100 to be paid on the 1st day of September, then next, and the balance, $400, on the 1st day of May, 1859. And it was declared in the mortgage that said sum of $600, was part of the consideration or purchase money of said goods and chattels, sold by said party of the second part to said party of the first part. Default having been made in the payment of the money secured by said mortgage, the mortgagee, through the defendant as her agent, took possession of the property covered by the mortgage, and had such possession at the time the same was taken by the sheriff under the plaintiff's claim in this action, and delivered to him. The judge charged the jury, that there was no express consent of the plaintiff for his wife to execute the mortgages read in evidence, but it was for the jury to say, whether the plaintiff had ratified the mortgages given by his wife to Louisa P. Strong; if they so found their verdict must be for the defendant, if not for the plaintiff, for

nominal damages. The plaintiff's counsel excepted to that part of the charge, as to the ratification of the mortgages or either of them, and said counsel, also, requested the judge to charge the jury, that the only question for them to determine, was the amount of damages, and that he should order a verdict for the plaintiff, but the judge refused so to do, and the plaintiff's counsel excepted to the refusal of the judge so to charge.

The jury found for the defendant, and assessed the value of the goods taken by the plaintiff, and judgment was thereupon entered against him, which on appeal was affirmed at the General Term, and the plaintiff now appeals to this court.

The judge rightfully refused to charge, that the only question for the jury to determine, was the amount of damages, and he properly refused to order a verdict for the plaintiff. There was not a scintilla of evidence, justifying the plaintiff's claim to the ownership of the piano. Whatever might be said, to sustain his claim as owner of the remaining property, covered by the mortgage from his wife to Mrs. Strong, there was nothing to sustain his claim as owner of the piano. It was purchased by his wife, while carrying on business on her own account, and a mortgage given to secure the payment of the purchase-money. It is difficult to see upon what principle the plaintiff can recover the possession of this piano from the vendor, when the same was pledged by the purchaser to the vendor, as security for the payment of the purchase-money, without payment thereof, or an offer or tender of such payment. Clearly, the plaintiff had not a shadow of title to the piano, or right to its possession.

In reference to the other property covered by the mortgage, assuming the ground taken by the plaintiff to have been established, namely, that he furnished the money for the purchase of the same, and that, technically, he was the owner thereof, then the question recurs, whether the plaintiff has so dealt with this property, by holding out to the world that his wife was the owner of this property, and permitting her thus to deal with it, as to estop him from now asserting the

contrary. For seven years the plaintiff permitted his wife to live separately from himself, to carry on an extensive business in her own name and upon her own account, to make purchases of property and to deal with the same as her own. It is true he furnished her with money, but under the circumstance disclosed, it must be regarded in the aspect of a loan by him to her, and the result did not follow that the property she purchased with that money solely, as it mingled with her own earnings, became that of her husband. Under our statutes, and the construction which has been put upon them, it was competent for the plaintiff's wife to transact business as a feme sole, and the property acquired by her in the prosecution of such business or purchased for its management, became her property, subject to her disposal and control. It was said by the learned judge who wrote the dissenting opinion in this case, in the case of *Goulding* v. *Davidson* (26 N. Y., 622), " The transactions stated in the complaint in the present case occured in 1852, after those statutes. They are to be taken to be actual and *bona fide* sales and transfers of property to the defendant, who was then a married woman. She became, by these transfers, the owner of these goods, and although she was incapable of any agreement, express or implied, to pay for them, yet that was merely on account of the existence of a legal rule or maxim. The delivery of the goods to her, at her request, under the statute which made them hers, and not her husband's, was a good consideration, out of which an implied promise would at once have arisen, had it not been suspended by the rule of law as to her disability to make an executory agreement."

It is clear, therefore, that Almira Sammis was the owner of the property, purchased by her, and used by her in carrying on the business of keeping a boarding house in the city of Brooklyn. The circumstance, that the plaintiff furnished her a portion of the money to make those purchases, in no sense vested the title of the property purchased in him. He and his wife, under the circumstances, and under our statutes, stood as strangers to each other, and there is no evidence that she acted as his agent, or held herself out as such. With

his knowledge and assent, she held herself out to the world as principal, and he cannot now be permitted to set up the contrary. But assuming that the plaintiff's wife had no legal capacity to execute these mortgages, how does that fact better his condition? To maintain this action, he has to establish his ownership to the property covered by the mortgage. This he has failed to do. The defendant was in possession, and by the act, and with the consent of the nominal and legal owner, and that possession cannot be disturbed but by one having a better title. This plaintiff has no title whatever. The doctrine is well settled, "when you will recover anything from me, it is not enough for you to destroy my title, but you must prove your own better than mine, for without a better right, *melior est conditio possidentis.*" (Broom's Max. 323.)

But the judge at the trial very correctly left it to the jury to say, whether the plaintiff had ratified the mortgage given by his wife to Louisa P. Strong, and that if they found he did, then that the plaintiff could not recover. The proposition of law contained in this charge, is not only sound in morals, but abundantly sustained by authority. That a married woman may effectually dispose of property which is either hers, or treated by her husband as hers, is clearly to be implied from the case of *Edgerton* v. *Thomas* (5 Seld., 40.) There a mortgage by the wife of a husband's goods was holden valid, the husband standing by and assenting to it. The assent of the husband was only important as estopping him from claiming the goods as his own, after permitting the wife to deal with them as hers. (See also *Sherman* v. *Elder,* 24 N. Y., 381; *Smith* v. *Knapp,* 27 id., 277; *Buckley* v. *Wells,* 33 id., 518.) Subsequent ratification is the equivalent of original authority or assent, and the jury having found, as matter of fact, that the plaintiff did assent to the execution of this mortgage to Mrs. Strong, to secure a *bona fide* debt owing by his wife to her, he cannot now be permitted to set up that his wife was not the owner of the property thus pledged, and had no legal capacity to execute the mortgage. Not having spoken when it was his duty to

speak, he must now be silent. The judgment appealed from must be affirmed with costs.

MORGAN, PECKHAM, PORTER, and LEONARD, JJ., concurred.

HUNT and SMITH, JJ., dissented.

WRIGHT, J., did not vote.

Judgment affirmed.