# UNITED STATES SUPREME COURT.

## HANNIBAL GREEN, plaintiff in error agt. MORRIS S. VAN BUSKIRK *et al.*

The act of congress of 1790, declares that the *record of a judgment* (authenticated in a particular manner) shall have the same faith and credit, as it has in the state court from whence it was taken. And this court has decided, that congress having declared the effect of the record, by declaring what faith and credit shall be given to it, it is only necessary to inquire, in every case, what is the effect of a judgment *in the state where it is rendered.*

The policy of the law in Illinois will not permit the owner of personal property to sell it, and still continue in possession of it. If between the parties, without delivery, the sale is valid; it has no effect on third persons, who in good faith get a lien on it; for an *attaching creditor* stands in the light of a purchaser, and as such will be protected.

As the effect of a levy, judgment and sale of attached property in the state of Illinois is to protect the attaching creditor, if sued in the courts of that state, and these proceedings are produced for his own justification; they ought also to produce, when he is sued in the court of *another state*, for the same transaction, and he justifies in the same manner, the same protection; even though it appear that the owner of the property attached and the attaching creditor are both *residents of another state*; and also that the owner had, previous to the attachment, given a chattel mortgage upon the property which was unknown to the attaching creditor at the time of the levy of the attachment, although it came to his knowledge before the attachment proceedings were completed. (*Reversing S. C. New York Supreme Court,* 34 *Barb.,* 457, *and the New York Court of Appeals,* 2 *Keyes,* 119.)

*December Term,* 1868.

IN ERROR to the supreme court of the state of New York. (Remittitur.)

AMASA J. PARKER *and* LYMAN TRUMBALL, *for plaintiffs in error.*

JOHN B. GALE *and* JOHN K. PORTER, *for defendants in error.*

DAVIS, J. That the controversy in this case was substantially ended when this court refused (5 *Wallace,* 312,) to

dismiss the writ of error for want of jurisdiction, is quite manifest by the effort which the learned counsel for the defendants in error now make, to escape the force of that decision.

The question raised on the motion to dismiss, was whether the supreme court of New York, in this case, had decided against a right which Green claimed under the constitution, and an act of congress. If it had, then this court had jurisdiction to entertain the writ of error—otherwise not. Green had attached certain iron safes in Illinois, as the property of one Bates, and sold them under his attachment; and being afterwards sued in New York, for the value of the property, by Van Buskirk, who claimed title to them through a mortgage from Bates, he plead in bar of the action these attachment proceedings; but the defense was unavailing, and judgment was rendered against him.

It was insisted on the one side, and denied on the other, that the faith and credit which the judicial proceedings in the courts of the state of Illinois, had by law and usage in that state, were denied to them by the supreme court of New York, in the decision which was rendered.

Whether this was so or not, could only be properly considered when the case came to be heard on its merits; but this court, in denial of the motion to dismiss, *held* that the supreme court of New York, necessarily decided *what* effect the attachment proceedings in Illinois had by the law and usage in that state; and as it decided against *the* effect which Green claimed for them, this court had jurisdiction under the clause of the constitution, which declares " that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings in every other state ; " and the act of congress of 1790, which gives to those proceedings, the same faith and credit in other states, that they have in the state in which they were rendered.

This decision, supported as it was by reason and author-

ity, left for consideration, on the hearing of the case, the inquiry, whether the supreme court of New York, did give to the attachment proceedings, in Illinois, the same effect they would have received in the courts of that state.   A succinct statement of the facts in the case, (which are brief) will give us a clear idea of what those proceedings were, and enable us the better to understand the controverted point concerning them.   It seems, that on the third day of November, 1857, Bates, who lived in Troy, New York, and owned certain iron safes in Chicago, Illinois, in order to secure an existing indebtedness to Van Buskirk and others, executed and delivered (in the state of New York) to them, a chattel mortgage on the safes.  Two days after this, Green, the plaintiff in error, also a creditor of Bates, sued out of the proper court of Illinois a writ of attachment, caused it to be levied on these safes, got judgment in the attachment suit, and had the safes sold in satisfaction of his debt.   At the time of the levy of this attachment, the mortgage had not been recorded in Illinois ; nor had possession of the property been delivered under it ; nor had the attaching creditor notice of its existence.   Green, Van Buskirk, and Bates were all citizens of New York.

As has been stated, the mortgagees sued Green in New York for taking and converting the safes, who defended the taking and conversion under the Illinois attachment proceedings.

It is stipulated in the record that these proceedings were regular, and in conformity with the laws of Illinois, that Bates was the owner of the safes on the 3d of November, 1857, and that Green was a *bona fide* creditor of Bates. After the levy of the attachment, Green was notified of the mortgage, and the claim under it, and the mortgagees were informed of the attachment ; but they did not make themselves parties to it, and contest the right of Green to levy on the safes, which they were authorized to do by the laws of Illinois.

By the statutes of Illinois (*R. S.* 1845, *p.* 63, *et sequitur*) any creditor can sue out a writ of attachment against a non-resident debtor, under, which the officer is required to seize and take possession of the debtor's property, and if the debtor cannot be served with process, he is notified by publication, and if he does not appear, the creditor, on making proper proof, is entitled to a judgment by default for his claim, and a special execution is issued to sell the property attached. The judgment is not a lien upon any other property than that attached; nor can any other be taken in execution to satisfy it. These statutes (*R. S.* 1845, *ch.* 20), further provide, that mortgages on personal property have no validity against the rights and interests of third persons, without being acknowledged and recorded, unless the property be delivered to and remain with the mortgagee.

And so·strict have the courts of Illinois been in construing the statute concerning chattel mortgages, that they have held, if the mortgage cannot be acknowledged in the manner required by the act, there is no way of making it effective, except to deliver the property, and that even actual notice of the mortgage to the creditor, if it is not properly recorded, will not prevent him from attaching and holding the property. (*Henderson* agt. *Morgan*, 26 *Ill.*, 430; *Porter* agt. *Dement*, 35 *Ill.*, 479.)

The policy of the law in Illinois will not permit the owner of personal property to sell it, and still continue in possession of it. If between the parties, without delivery, the sale is valid; it has no effect on third persons, who in good faith get a lien on it; for an attaching creditor stands in the light of a purchaser, and as such will be protected. (*Davenport* agt. *Thornton*, 1*st Scammon* : *Strawn* agt. *Jones*, 16 *Ill.*, 117.) But it is unnecessary to cite any other judicial decisions of that state, but the cases of *Martin* agt. *Dryden* (1 *Gilman*,) *and Robertson* agt. *Burnell*, (5 *Gilman*,) which are admitted in the record to be a true exposition of the laws of Illinois on the subject, to estab-

lish that *there* the safes were subject to the process of attach-
ment and that the proceedings in attatchment took pre-
cedence of the prior unrecorded mortgage from Bates.

If Green, at the date of the levy of his attachment, did
not know of this mortgage, and subsequently perfected his
attachment by judgment, execution and sale, the attachment
held the property, although at the date of the levy of the
execution he did know of it. The lien he acquired, as a
*bona fide* creditor when he levied his attachment without
notice of the mortgage, he had the right to perfect and
secure to himself, notwithstanding the fact that the mort-
gage existed, was known to him, before the judicial pro-
ceedings were completed. This doctrine has received the
sanction of the highest court in Illinois through a long
series of decisions, and may well be considered the settled
policy of the state on the subject of the transfer of personal
property. If so, the effect which the courts there would
give to these proceedings in attachment, is too plain for
controversy. It is clear, if Van Buskirk had selected
Illinois, instead of New York, to test the liability of these
safes to seizure and condemnation; on the same evidence
and pleadings, their seizure and condemnation would have
been justified.

It is true, the court in Illinois did not undertake to settle
in the attachment suit the title to the property, for that
question was not involved in it, but when the true state of
the property was shown by other evidence, as was done in
this suit, then it was obvious that by the laws of Illinois it
could be seized in attachment as Bates' property.

In order to give due force and effect to a judicial pro-
ceeding, it is often necessary to show by evidence, outside
of the record, the predicament of the property on which it
operated. This was done in this case, and determined the
effect the attachment proceedings in Illinois produced on
the safes, which effect was denied to them by the supreme
court of New York.

At an early day in the history of this court, the act of congress of 1790, which was passed in execution of an express power conferred by the constitution, received an interpretation which has never been departed from, and obtained its latest exposition in the case of *Christmas* agt. *Russell*, decided in 5 *Wallace*. (*Mills* agt. *Duryee*, 7 *Cranch; Christmas* agt. *Russell*, 5 *Wallace*.)

The act declares that the record of a judgment, (authenticated in a particular manner,) shall have the same faith and credit as it has in the state court from whence it is taken. And this Court say: "Congress have therefore declared the effect of the record, by declaring what faith and credit shall be given to it;" and that "it is only necessary to inquire in every case what is the effect of a judgment in the state where it is rendered."

It should be borne in mind, in the discussion of this case, that the record in the attachment suit was not used as the foundation of an action, but for purposes of defense. Of course, Green could not sue Bates on it, because the court had no jurisdiction of his person; nor could it operate on any other property belonging to Bates, than that which was attached.

But, as by the law of Illinois, Bates was the owner of the iron safes when the writ of attachment was levied, and as Green could, and did lawfully attach them to satisfy his debt, in a court which had jurisdiction to render the judgment, and as the safes were lawfully sold to satisfy that judgment, it follows, that when thus sold the right of property in them was changed, and the title of them became vested in the purchaser at the sale. And as the effect of the levy, judgment, and sale is to protect Green, if sued in the courts of Illinois, and these proceedings are produced for his own justification, it ought to require no argument to show, that when sued in the court of another state for the same transaction, and he justifies in the same manner, that he is also protected. Any other rule, would destroy all

safety in derivative titles, and deny to a state, the power to regulate the transfer of personal property within its limits, and to subject such property to legal proceedings.

Attachment laws, to use the words of Chancellor KENT, "are legal modes of acquiring title to property by operation of law." They exist in every state for the furtherance of justice, with more or less of liberality to creditors. And if the title acquired under the attachment laws of a state, and which is valid there, is not to be held valid in every other state, it were better that those laws were abolished, for they would prove to be but a snare and a delusion to the creditor.

The Vice-Chancellor of New York, in *Cochran* agt. *Fitch*, (1 *Sand. Ch. R.*, 146,) when discussing the effect of certain attachment proceedings in the State of Connecticut, says: "As there was no fraud shown, and the court in Connecticut had undoubted jurisdiction *in rem* against the complainant, it follows that I am bound in this state to give to the proceedings of that court the same faith and credit they would have in Connecticut." As some of the judges of New York had spoken of these proceedings in another state, without service of process or appearance, as being nullities in that state and void, the same vice-chancellor says: "But these expressions are all to be referred to the cases then under consideration, and it will be found that all those were suits brought upon the foreign judgment as a debt, to enforce it against the person of the debtor, in which it was attempted to set up the judgment as one binding on the person."

The distinction between the effect of proceedings by foreign attachments, when offered in evidence as the ground of recovery against the person of the debtor, and their effect when used in defense to justify the conduct of the attaching creditor, is manifest and supported by authority. (*Cochran* agt. *Fitch, cited above; Kane* agt. *Cook,* 6 *California,* 449.)

Chief Justice PARKER, in *Hall* agt. *Williams*, (6 *Pick.*, 232,) speaking of the force and effect of judgments recov-

·ered in other states, says: "Such a judgment is to conclude as to every thing over which the court which rendered it had jurisdiction. If the property of the citizen of another state, within its lawful jurisdiction, is condemned by lawful process there, the decree is final and conclusive."

It would seem to be unnecessary to continue this investigation further, but our great respect for the learned court that pronounced the judgment in this case, induces us to notice the ground on which they rested their decision.

It is, that the law of the state of New York is to govern this transaction, and not the law of the state of Illinois, where the property was situated; and as, by the law of New York, Bates had no property in the safes at the date of the levy of the writ of attachment, therefore, none could be acquired by the attachment. The theory of the case is, that the voluntary transfer of personal property is to be governed everywhere by the law of the owner's domicil, and this theory proceeds on the fiction of law, that the domicil of the owner draws to it the personal estate which he owns, wherever it may happen to be located. But this fiction is by no means of universal application, and, as Judge STORY says, "yields, whenever it is necessary for the purposes of justice that the actual *situs* of the thing should be examined." It has yielded in New York ·on the power of the state to tax the personal property of one of her citizens, situated in a sister state, (*The People ex rel. Hoyt* agt. *The Com'r. of Taxes*, 23 *N. Y.*, 225,) and always yields to "laws for attaching the estate of non-residents, because such laws necessarily assume that property has a *situs* entirely distinct from the owner,s domicil."

If New York cannot compel the personal property of Bates (one of her citizens) in Chicago, to contribute to the expenses of her government, and if Bates had the legal right to own such property there, and was protected in its ownership by the laws of the state; and, as the power to protect implies the right to regulate, it would seem to

follow, that the dominion of Illinois over the property was complete and her right perfect to regulate its transfer, and subject it to process and execution in her own way, and by her own laws. We do not propose to discuss the question, how far the transfer of personal property, lawful in the owner's domicil, will be respected in the courts of the country where the property is located, and a different rule of transfer prevails.

It is a vexed question, on which learned courts have differed; but, after all, there is no absolute right to have such transfer respected, and it is only on a principle of comity that it is ever allowed. And this principle of comity always yields, when the laws and policy of the state where the property is located, have prescribed a different rule of transfer with that of the state where the owner lives. We have been referred to the case of *Guillander* agt. *Howell*, (35 *N. Y.*, 651.) recently decided by the Court of Appeals of New York, and, as we understand the decision in that case, it harmonizes with the views presented in this opinion. A citizen of New York, owning personal property in New Jersey, made an assignment, with preferences to creditors, which was valid in New York but void in New Jersey; certain creditors in New Jersey seized the property there under her foreign attachmant laws, and sold it, and the court of appeals recognized the validity of the attachment proceedings, and disregarded the sale in New York. That case and the one at bar, are alike in all respects, except that the attaching creditor there, was a citizen of the state in which he applied for the benefit of the attachment laws, while Green, the plaintiff in error, was a citizen of New York; and it is insisted, that this point of difference is a material element to be considered by the court in determining this controversy, for the reason that the parties to this suit, as citizens of New York, were bound by its laws.

But the right under the constitution of the United States,

Green agt. Van Buskirk.

and the law of Congress, which Green invoked to his aid, is not at all affected by the question of citizenship.

We cannot see, why, if Illinois, in the spirit of enlightened legislation, concedes to the citizens of other states, equal privileges with her own, in her foreign attachment laws, that the judgment against the personal estate, located in her limits, of a non-resident debtor, which a citizen of New York lawfully obtained there, should have a different effect given to it, under the provisions of the constitution and the law of congress, because the debtor, against whose property it was recovered, happened also to be a citizen of New York.

The judgment of the supreme court of the State of New York is reversed, and the cause remitted to that court, with instructions to enter judgment for the plaintiff in error.