SOPHRONIA GAGE, Appellant, v. JOHN DAUCHY and WILLIAM
L. BEEKMAN, Respondents.

Section 3 of the Laws of 1848 and 1849, in respect to married women, vests in
the wife the legal title to the rents, issues and profits of her real estate, as
against the husband and his creditors, "with the like effect as if she were
unmarried;" and the husband cannot now, as formerly, acquire title to such
property in virtue of his marital rights.

Where the wife was the owner of a farm upon which she resided with her hus-
band, and which he carried on in her name, without any agreement as to
compensation: Held, that neither the products of the farm, nor property taken
in exchange therefor, could be attached by creditors, as the property of her
husband.

Where the legal title to property is in the wife, as against her husband, it can-
not be seized to satisfy his debts without proof that, in the given case, her title
is merely colorable and fraudulent as against the creditors of the husband.

APPEAL from judgment of General Term, reversing the
judgment at Circuit and ordering a new trial on exceptions
taken by the defendant.

The plaintiff's complaint was in trespass, charging the
defendant with the taking and conversion of a pair of bob-
sleds and eight hogs belonging to her, to her damage of
$100. The answer consisted of a general denial and a justifi-
cation, under a judgment and execution in favor of one
Carlton Smith against Phineas L. Goodwin; the defendant
acting in aid of the sheriff, who sold the property as the
property of the said Goodwin, to whom the defendant
alleged it belonged at the time of the levy.

On the trial, the plaintiff read in evidence a chattel
mortgage given by Angelina A. Goodwin and Phineas L.
Goodwin, her husband, covering the property mentioned in
the complaint, with other property, to secure the payment
of the sum of $1,000 in three years from the date (March 30,
1857). The plaintiff then read, in evidence, a deed to her
from Reuben C. Green and wife, for sixty-four acres of land,
situate in Hartland, Niagara county, dated March 10, 1855 —
consideration, $2,575; of which $1,400 was paid by her out
of her father's estate, and the balance secured by her bond

and mortgage. In May, 1856, Mr. Winder, her agent, paid the mortgage and took her note for the money.

Mr. Goodwin lived on the farm, with his family, consisting of his wife and four children, and a niece of Mrs. Goodwin, and worked it. Mrs. Angelina Goodwin, his wife, testified that the chattel mortgage was given for money she had of her mother. She had $900 at one time, which she thinks was used to pay off the bond and mortgage on the farm. She says she owed her mother over $1,000; that she had eleven pigs and one pair of bob-sleds when she gave the mortgage. Seven of the pigs were littered on the farm, from a sow she got in exchange for two pigs which she had previously bought. Four others she bought and paid for with grain raised on the farm. Bought the bob-sleds by trading another pair, which had been purchased with grain raised on the farm. It would appear, however, that her husband did some of the trading for her.

There was no agreement to pay her husband for his labor on the farm; but there is some evidence that Mrs. Goodwin made some of the contracts for hiring men, and paid them, and that she helped make some of the bargains for stocking the farm. The sheriff says he notified the purchasers at the sale that he only sold all the right and title of Phineas L. Goodwin in the property.

The court charged the jury, 1. That if Mr. Goodwin had any interest in the property, the execution would hold it, as it was issued before the mortgage was filed. 2. If they believed, from the testimony, that the farm was bought for Mrs. Goodwin, and paid for wholly by her money, then the farm belonged to her, and her husband had no interest in it. 3. If she owned the farm, she was entitled to the crops raised thereon, unless she had made some agreement with some other person, giving an interest in the crops to another. To this there was an exception. 4. The court further charged the jury, that her husband would not acquire any interest in the crops or produce of the farm, although he worked it, unless there was an agreement by which he was to have an interest in them. To this there was an exception.

5. The court further charged the jury, in substance, that if the property in question was purchased and paid for from grain raised on the farm, or her other separate property, in good faith, it belonged to her, and not to her husband. To this there was an exception.

The defendant then requested the court to hold, in substance, that if the farm was carried on by the husband, with the consent of his wife, in the absence of any agreement to compensate him for his services, the law will imply that the farm was cultivated for the benefit of the husband, and he will be entitled to the produce and profits of the business. The court refused to charge as requested; to which refusal the defendants' counsel excepted.

The jury here found a verdict for the plaintiff, for the value of the property. A new trial was granted by the General Term.

*George F. Danforth*, for the appellant.

*G. D. Lamont*, for the respondents.

Morgan, J. There is nothing in the answer giving color to the defense of justification, by suggesting a fraudulent transfer of the property from Goodwin to the plaintiff, which would avoid the contract as to creditors. It is, therefore, questionable whether the answer of justification amounts to anything more than a denial of property in the plaintiff. (*Van Etten* v. *Hurst*, 6 Hill, 311.)

From the very able and learned opinion delivered by the judge in the court below, I infer that a new trial was granted upon the theory of a gift of the property from the wife to her husband. The authorities which have been cited from the old reports, however, throw but little light upon the question, and it would be unsafe to follow them for an exposition of the laws of this State, regulating the marital relations and defining the rights of married women. When the husband was permitted to reduce his wife's personal property and choses in action to possession, and to enjoy the rents and profits of her real estate, as well as the earnings of

her own labor, courts of equity sometimes interfered, and established certain rules for her protection, which are no longer necessary to be resorted to in defense of her rights. Under the statutes of 1848 and 1849, it was held, in some of the reported cases in the Supreme Court of this State, that the husband was not only entitled to the fruits of his wife's labor, but also to the profits and increase of any business in which she may have embarked, although carried on in her name by the aid of her separate estate. But this court, in *Knapp* v. *Smith et al.* (27 N. Y., 277), exploded this doctrine, and put the question upon the true ground, viz.: whether, in a given case, the transaction between husband and wife is sincere and *bona fide*, or a colorable device to cheat the creditors of the husband. And this is always a fact which, upon proper evidence, should be left to the jury.

This action having been commenced before the amendment of 1860, the rights of the plaintiff must depend upon the true construction of the acts of 1848 and 1849. By § 3, Laws of 1849, p. 528, the wife is permitted to hold to her separate use her real estate, and the *rents, issues* and *profits* thereof, in the same manner and with like effect as if she were unmarried, and the same shall not be *subject to the disposal of her husband, nor liable for his debts.*

It will be seen at once that this is a clear innovation upon the marital rights of the husband at common law. While a court of equity might formerly, by injunction or otherwise, restrain the husband from converting his wife's property to his own use by virtue of his marital rights, the legislature renders this interference unnecessary by a peremptory statute, vesting in her the legal title, as against her husband and his creditors, "with the like effect as if she were unmarried." This statute is too plain to be mistaken. It must be construed by itself, in view of the general policy of the legislature. The principal object of these statutes was, doubtless, to obliterate all those common law doctrines by which the husband was enabled to acquire any of his wife's estate through his marital relations.

Aside from his marital relations, there is no principle upon which it could be claimed that the husband of Mrs. Goodwin acquired any legal title to the produce of her farm. On the contrary, it is quite doubtful whether she could convey to him the legal title. The statutes of this State have not improved the condition of the husband in any respect, and he cannot enter into a valid contract with his wife now, any more than he formerly could.

I know it is said by some of the judges, that such a construction of the statute puts the husband in a humiliating condition, little better than that of a *serf* on her estate; but this consideration is one that appeals to the legislature, and not to the courts.

While the legislature leaves the husband the right and makes it his duty to live with his wife, he must necessarily live upon her farm, if they have no other place to live. Surely it could not have been the object of the legislature to deprive the wife of the benefit of his services. The idea that there should be an agreement between them as to wages is absurd; for the legislature has not yet changed the common law so as to allow them to make a business contract with each other. Certainly, there is no way provided to enforce it. But, even upon grounds of equity, there is no reason why the husband should be entitled to the growing crops which he helps to cultivate on her farm. The law still requires him to support his wife and family. If it was competent for the husband and wife to make an agreement in respect to his labor, they might agree that he should bring the amount of his wages into the house to be expended in providing them with food and clothing. As he is, by law, bound to provide for his wife and family, the whole support of the family might be cast upon him, while she used the rents, issues and profits of her separate estate to enlarge her wardrobe, or to engage in some new business which the law allows her to carry on, on her sole and separate account, without interference of her husband.

If I am not mistaken, this case is controlled by the authority of *Knapp* v. *Smith*, in this court, already referred

to. There is no difficulty in holding that, at law, a married woman may now own personal property, as against her husband. But her title is always open to inspection, and may be set aside by the court or jury in favor of those who have a right to challenge it for fraud. The creditors cannot reach it upon the ground that it is the husband's, as against his wife, but only upon the ground of fraud. The judgment should be reversed, and a new trial denied.

Leonard, J. The act of 1849, in respect to married women, was designed for their safety and protection from the debts and contracts of the husband.

It is declared that the rents, issues and profits of her property shall not be subject to the disposal of the husband, nor be liable for his debts, and shall continue her separate property as if she were a single woman.

The inquiry is naturally suggested, whether the married woman loses the protection of this statute if she permits her husband to reside with her upon her own farm, and to work on it at his pleasure, assisting her in making it productive, without any agreement between them as to the ownership of the crops, or as to the compensation for his labor? To my mind, the answer is obvious.

The principles of the common law, as expounded by Clancy and Roper, when attempted to be applied to the rents, issues and profits of her estate or her separate property, are repealed.

It has become the duty of courts to execute the law, both in letter and spirit, and they are not to seek how not to do it.

The demands of the husband's creditors are not to be elevated above the rights of the wife, under this statute. Her property and its income are exempted from that liability, in cases free from fraud. The creditor who sells or lends to a man who has not the means of making payment, does so at his own hazard, and he does not thereby make a case for construing this statute with strictness against the married woman. According to the argument of the learned justice who delivered the opinion at the General Term of the

Supreme Court, if the husband is permitted to reside with his wife, and sells or exchanges any of the property which is the produce of her farm, or the offspring of her live stock, without the express authority of the wife, it is to be deemed a gift or dedication to the husband of the articles sold or exchanged.

This ruling maintains the ancient doctrine in respect to the personal estate of the wife, which has been permitted, voluntarily on her part, to come to the possession of her husband. Such a rule can be maintained only upon a narrow and strict construction of the statute. The fault of such a construction is that it permits the mischief to remain, which the statute was designed to remedy. The income and profits of her separate estate are not then free from liability for the debts of her husband.

It is urged as a reason for this rule, that the labor of the husband is entitled to its reward, and that if the wife were single or unmarried, and Goodwin, the husband, had entered upon her land and raised a crop, without any agreement constituting them landlord and tenant, she could not have taken the crop, but would be entitled to recover only for the use and occupation of her land. " Surely," says the judge, " her relation to him as a wife, does not confer greater rights than she would have had as a *feme sole.*"

The case is speciously presented in this manner. Let us state the fact a little differently. Let Goodwin, a stranger, come upon the land where the owner, a *feme sole,* resided, and using her team and implements of husbandry to cultivate her land, would it not be implied that he worked for wages, or that he was the servant or agent of the owner? Surely, with the statute in her favor, her relation to the laborer, as a wife, should not deprive her of the benefit of the same rule.

It is not competent for husband and wife to make an agreement between themselves for wages, nor for the renting of the wife's land. It should not be inferred from the want of an agreement of this nature, which cannot be enforced, that the wife consented that her husband should

be the owner of the produce of the land, or of the offspring of her live stock.

The argument is, that we must imply that the wife consented that the husband should be owner of the crops, &c., which were the products, in part, of his care and labor. The implication establishes a rule, and effects a result that deprives the wife of the rents, issues and profits of her property, and is subversive of the remedy incorporated in the statute, and reëstablishes the former mischief. The case of *Buckley* v. *Wells,* decided at a late term of this court, and not yet reported, of which the learned reporter of this court has furnished me a copy since the foregoing opinion was written, is a full authority for the views I have here expressed.

For these reasons I think the General Term were in error, and that their judgment should be reversed, and that of the circuit be affirmed, with costs.

Judgment reversed.