All the judges concurred, except HUNT, J., who dissented, and MORGAN, J., not voting.

Judgment affirmed, with costs.

---

## KLUENDER v. LYNCH.

December, 1868.

Where a wife is in possession of a stock of goods, claiming them as her separate property, and doing business in her own name, creditors of her husband, who seize the goods on process against him, must prove her possession fraudulent.

The fact that the husband assisted in the business and that both labored to some extent for their joint benefit, is not conclusive evidence of fraud.

A husband may transfer money and personal property to his wife in payment of a debt due to her from him, if she have a separate estate with which she is authorized to deal as if unmarried.*

---

* The acts of 1848 and 1849 did not enable a wife to convey direct to her husband, nor to make other conveyances formerly prohibited by special reasons of policy or convenience. White v. Wager, 25 *N. Y.* 328. But the wife may convey to her husband through a third person. Lynch

Kluender *v.* Lynch.

In a wife's action against the husband's creditors, for seizing such property, evidence that the husband contracted the debt for which the judgment was recovered, by false representations that he was not indebted, is not material or competent.

An exception expressed to be "to the several points charged by the judge, wherein the charge differs from anything contained in any of the exceptant's propositions or requests to charge," is too general and wholly unavailing.

A demand is not necessary before commencing an action by a wife against a sheriff, for wrongfully levying, upon her property, an execution against her husband

Adolphene Kluender sued James Lynch, sheriff of the city and county of New York, in the New York superior court, to recover the contents of the cigar store No. 78 Bowery (or the value thereof), which had been levied upon by the defendant, under an execution against Frederick H. Kluender, the husband of the plaintiff.

The plaintiff married F. H. Kluender in 1845, in Prussia; they came to this country about 1851, and always lived together subsequent to their marriage. The husband, soon after his arrival, commenced business in a small way, with very lim-

---

*v.* Livingston, 6 *N. Y.* 422. Under the statutes of 1862, however, it is held that the common law rule that a wife cannot take by gift from her husband is abrogated. Rawson *v.* Pennsylvania R. R. Co., 2 *Abb. Pr. N. S.* 220; affirmed in 48 *N. Y.* 212.

Indeed, where the rights of creditors are not concerned, a gift of personal property, by a husband to his wife, may be sustained without the aid of the statutes for the protection of married women. Kelly *v.* Campbell, p. 492 of this vol.

It has been held both by the supreme court (Jaycox *v.* Caldwell, 37 *How. Pr.* 240) and the New York superior court (Peck *v.* Brown, 2 *Robt.* 119), that a husband may now, by a conveyance direct to his wife, as in the latter case, or by a provision for her benefit in an assignment in trust, as in the former, create an equity in her favor, which the courts may protect and enforce, even as against subsequent creditors. And to similar effect is Lockwood *v.* Cullin, 4 *Robt.* 129. See also Phillips *v.* Wooster, 36 *N. Y.* 412; S. C., 3 *Abb. Pr. N. S.* 475; Hunt *v.* Johnson, 44 *Id.* 27.

It was held in Wolfe *v.* Security Ins. Co., 39 *N. Y.* 49, that an insurance company who have consented to a transfer of their policy by a husband to whom it was issued, to his wife, cannot, after a loss, object to a transfer on the ground that husband and wife are incompetent to contract with each other. The wife's equitable interest must be protected.

ited means, and after various changes, he, prior to 1857, commenced business in the Bowery, with very little capital. From October, 1857, to June, 1858, Mrs. Kluender received from Germany four thousand six hundred and seventy-five dollars and ninety-one cents, of which she at different times let her husband have four thousand six hundred dollars. He enlarged and increased his business, by investing in it all of this money; with this capital he continued the business until a fire occurred, about the middle of January, 1861. All of the cigars and tobacco he had at the time of the fire were burned. Subsequent to that time, and down to May 1, 1861, he continued business in Houston-street, when a lease of the premises 78 Bowery was taken in the name of himself and wife, and from that time the business was conducted in the name of the wife.

The money with which she thus went into business was received by the husband from the insurance companies; he paid to her, in all, about two thousand dollars in money, cigars and tobacco. This embraced his entire property. Thereupon, the husband and wife reversed their relations ; he entered into her employ, and received his eating and drinking and whatever necessaries he had. Of course, after this time, whatever was done by the husband was in the name of the wife. After the fire, while the husband carried on business in Houston-street, and on March 11, 1860, he bought a quantity of tobacco of Fatman & Cardozo, gave his note, on which the judgment was recovered, which was set forth in defendant's answer.

The court refused to allow the defendant to prove statements alleged to have been made by the husband, as to his not owing any person whatever, at the time he bought the tobacco of Fatman & Cardozo, and gave his note; and the defendant excepted to this ruling.

At the close of the evidence the defendant's counsel moved for a nonsuit upon five grounds.

This motion having been denied, and the ruling of the court excepted to, the defendant's counsel requested the court to charge the jury as follows:

I. If the jury believe the evidence of the plaintiff, that her husband was her servant in and about the business of the store 78 Bowery, and that she received and retained the advantages

and accumulations of his labors there, the plaintiff cannot recover.

II. If the jury believe the purchases for the store were made by the husband, and were paid out of the proceeds of the business of the store conducted as stated by her in her evidence, the plaintiff cannot recover.

III. If the jury believe that the plaintiff and her husband labored together in the store, and by joint efforts, added accumulations and cash to the store (which accumulations and cash have not been separated), the plaintiff cannot recover.

IV. If the jury find that the property belonged to Mrs. Kluender (the plaintiff), by her allowing the husband to manage and control it for her, and in devoting his time and labor to its accumulations, it became liable to pay his debts.

As to the preceding requests, the court refused so to charge, to which refusal the counsel for the defendant excepted.

V. In coming to a decision, whether the money paid to Kluender was a loan or gift, the jury are authorized to take into consideration the time of the alleged loan, and the circumstances attending that transaction.

The court so charged.

VI. If the jury find that the plaintiff loaned the money, in 1857 and 1858, to her husband, to enable him to enlarge and extend his business, and he did so use it, he could not, after obtaining the credit from the judgment creditors, for which the execution was issued, so transfer it as to relieve it from the claims of the creditors referred to.

VII. As against the creditors of the husband, no valid transfer of the property or proceeds could be made to the wife. The *title* would not pass so as to be recognized in a court of law.

VIII. While the statutes relating to the property of married women exempt her property from her husband's control, and from his debts while she retains it herself, yet when she places it under his control, and allows him to invest it in trade, the restriction no longer applies. As to his creditors, it is his property. She loses the benefit of the statutes, and the common law declares the creditors' rights.

IX. That the form of the property may have been changed does not alter the rule; as in the case of property substituted for

property which had been fraudulently transferred, the trust attaches to it.

X. Under the evidence the defendant is entitled to a verdict.

As to the five preceding propositions, the court refused so to charge, to which refusal the defendant's counsel excepted.

The charge of the judge, which was fully approved by the court on the present appeal was (with some condensation) as follows :

The first question which you are to determine is whether Mrs. Kluender, when she transferred the money to her husband in 1857 and 1858, intended to make a gift of it to him ; or whether she intended to, and did in fact, create the relation of debtor and creditor, between herself and her husband. If it was designed as a gift, it having been accompanied by actual delivery, the money became absolutely his property, and there was no obligation on his part to repay it; it became subject to his control, and liable for his debts. If, however, it was a loan, if the intention of Mrs. Kluender, when she gave the money to her husband, was that it was to be a loan—she then had the right at any time to demand payment of it; and it was proper for him, notwithstanding he was at the time indebted to other parties, on such demand being made, to pay the money back to her. In considering this question, it is immaterial whether any security was given or not, the obligation was just as binding in law, notwithstanding a written security was not taken. In determining this question, it is proper for you to look at all the circumstances—the length of time since the money was transferred, without any demand being made by her for its payment, and also the fact that no written security was taken. You are to look at the circumstances, not as conclusive, but as facts proper for your consideration in determining the question whether this was a loan or a gift.

If you shall come to the conclusion that that this was a debt due by Kluender to his wife, then, as I have already said, it was proper that he should pay it back when she demanded it, and his other creditors had no right to object.

The next question for you to determine will be whether Mrs. Kluender did, in good faith, embark in business at No. 78

Bowery, on the May 1, 1861, with her own property. The act of 1860, which confers very unusual rights upon married women, authorized her to engage in any trade or employment for her own sole benefit, as if she were a single woman. It not only authorized her to embark in business, but declares that she may sue and be sued in respect to such business to the same extent as if she were a single woman. I have no hesitation in saying that, by the act of 1860, it is entirely competent for a married woman to engage in any business, irrespective of her husband, and her property invested in such business is not subject to his debts. You are to decide whether she did so embark in business on her own account, with her own property, and for her own benefit. In determining this question you have a right to look at all the facts and circumstances in the case; —the fact that her husband assisted her in the manufacture of cigars, and in making the sales—that he made purchases for her, which were paid for out of the avails of the business, and that they labored together, to some extent, for their joint benefit. You are to satisfy yourselves, from the evidence, that the business was hers, and not her husband's, and that her embarking in business, in her own name, was not designed to cover up the property from his creditors. If it was a mere design or contrivance between them that she should embark in business, in her own name, for the purpose of keeping the property from his creditors, such a transaction would be void as against his creditors. If you shall come to the conclusion that the plaintiff made a loan of this money to her husband, that she demanded it back, that it was paid to her by him, and that, in good faith, she embarked in business on her own account, and for her own benefit, you will find a verdict for the plaintiff, and the remaining question will then be one of damages.

The counsel for defendant, as to the points on which requests had been submitted by him, excepted to the several points of the charge, so *far as the same differed from his requests.*

The jury found a verdict for the plaintiff for five hundred dollars, and the court directed that the exceptions be heard in the first instance at the general term, judgment in the mean time to be suspended.

Judgment was rendered overruling the exceptions, and the defendant appealed to this court.

*Brown, Hall & Vanderpoel,* for the defendant, appellant;—Cited Adler *v.* Mil. Pat. Brick Manu., 13 *Wisc.* 57; Nazro *v.* Merch. Mu. Ins. Co., 14 *Id.* 295; 1 *Rev. Stat.* 601, 602, § 2; 1 *Rev. Stat.* 766, § 17; Collomb *v.* Caldwell, 16 *N. Y.* 484; Wilson *v.* Robertson, 21 *N. Y.* 587; Candee *v.* Lord, 2 *N. Y.* 269, 274; Burtus *v.* Tisdall, 4 *Barb.* 571; Jarman *v.* Wooloton, 3 *T. R.* 618; Freeman *v.* Orser, 5 *Duer,* 476; Sherman *v.* Elder, 1 *Hilt.* 178; Hallowell *v.* Horter, 35 *Penn.* 375; Marsh *v.* Hoppock, 3 *Bosw.* 478; Cropsey *v.* McKinney, 30 *Barb.* 47; Vallance *v.* Bausch, 28 *Barb.* 633; Burger *v.* White, 2 *Bosw.* 92; Tripp *v.* Childs, 14 *Barb.* 85; Van Arsdale *v.* Dixon, *Lalor's Hill & Denio,* 358; Voorhees *v.* Trustees of Presb Church, 17 *Barb.* 103.

*Cyrus Lawton,* for the plaintiff, respondent;—Cited Merchant *v.* Bunnell (reported in this series, vol. 3); Buckley *v.* Wells, 3 *N. Y.* 518; Sammiss *v.* McLaughlin, 35 *Id.* 647; Sherman *v.* Elder, 24 *Id.* 381; Babcock *v.* Eckler, *Id.* 623; Merritt *v.* Lyon, 3 *Barb.* 110; 3 *R. S.* 225, § 4, 5 ed.; *L.* 1848 and 1849; *Id.* 1860, c. 90; *Id.* 1862, c. 172; Gage *v.* Dauchy, 34 *N. Y.* 293.

MASON, J.—When actions had names, this wou'd be known as an action of trover, brought to recover the contents of a cigar store, No. 78 Bowery, New York city. The plaintiff makes title to the property in virtue of her possession and apparent ownership. She is a married woman, and was carrying on business at that place, in her own name. Her husband, Frederick H. Kluender, was owing his wife, the plaintiff, for borrowed money, some six thousand dollars, and he, having been burned out, in order to pay her, made over to her in money, cigars, &c., some two thousand dollars, and with this she went into business in her own name and on her own account. Her husband assisted her and rendered some services in her business. The defendant is sheriff of the county of New York, and makes title to the property in virtue of a judgment and execution against Frederick H.

Kluender, having levied upon the property, as sheriff, in virtue of an execution placed in his hands against the said Frederick H. Kluender. The cause was tried before the court and jury, and was submitted to the jury in a charge unexceptionable, it seems to me. The plaintiff was in possession, doing business in her own name, and as against her, the husband's creditors, before they can claim to disturb her, must assume the responsibility of averring and proving her possession fraudulent. It was decided in this court, in the case of Gage v. Dauchy, 34 N. Y. 293, that where the legal title to property is in the wife as against her husband, it cannot be seized by his creditors to satisfy his debts, without proof that in the given case her title was merely colorable and fraudulent as against the creditors of the husband. It was decided in this court, in the case of Buckley v. Wells, 33 N. Y. 518, that, under existing statutes, a married woman may manage her separate property through the agency of her husband, without subjecting it to the claims of his creditors. That she is entitled to the profits of a mercantile business conducted by the husband in her name, when the capital is furnished by her, and he has no interest but that of a mere agent. That the application of an indefinite portion of the income to the support of the husband does not impair the title of the wife to her property, and that no interest in her separate property is acquired, either by the husband or his creditors, through the husband's voluntary services as her managing agent.

This case is in point, and disposes of much of the argument of the defendant's counsel. The defendants, in this case, sought and failed with the jury, and their verdict is conclusive in this court. The only questions reviewable on this appeal, are the judge's rulings upon questions of law.

The exception taken to the rejection of evidence offered by the defendant, as to the husband's statements, was not well taken. It was wholly immaterial to the issue on trial between these parties what Kluender might have said at the time he contracted the debt with the firm of Fatman & Cardoza, upon which the judgment was obtained on which the execution, levied by the defendants in this case, was issued. Besides, what he said to them at the time he contracted that debt was wholly

35

incompetent. His statements, upon no principle, can be given in evidence against the plaintiff. The whole object of the question put, was to show that Kluender stated he was not owing any person, and this, of course, would embrace the plaintiff in this suit. The evidence was properly rejected. The defendant's counsel submitted ten distinct propositions which he requested the judge to charge, all of which, except the fifth, the judge refused. I have examined as well these requests as the charge itself and find no error in them.

The charge itself covered the whole case, and submitted the real issues in debate to the jury, and besides, there is no proper or well taken exception to the charge. The case states at the end of the charge that the counsel for the defendant, as to the several points charged by the judge upon which requests had been submitted by him, excepted separately to such portions of said charge, so far as the same differed from the request made in that behalf. Where the charge contains several distinct propositions, and exception is taken to the charge generally, if either proposition be sound and correct, the exception will be unavailing. 1 *Seld.* 422; 3 *Id.* 266; 4 *Id.* 37, 67; 5 *Id.* 171; 2 *Kern.* 313. And so where the exception is to the whole charge and every part of it. 2 *Seld.* 233; 1 *Kern.* 416. And so as to an exception to each and every part of the charge. 1 *Kern.* 416.

The exception to the charge here, is still more objectionable. The defendant has submitted ten requests to charge, running over nearly three pages of the printed case, and the charge occupies more than two pages, containing various propositions, and the exception is to the several points charged by the judge, wherein the charge differs from anything contained in any of these ten propositions or requests to charge. This will not do, and such an exception is wholly unavailing. The appellant's counsel seems to rely on the judge's refusal to charge the sixth proposition requested by the defendant's counsel, to wit, that, "if the jury find that the plaintiff loaned the money in 1857 and 1858, to her husband, to enable him to enlarge and extend his business, and he did so use it, he could not, after obtaining the credit from these judgment creditors, for which the execution was issued, so transfer it as to relieve it from the claims of

the creditors referred to." This proposition is not sound. It assumes that the husband could not pay money, or sell and deliver property to his wife, to pay her for such loan of money, in however good faith, or with whatever honest motives the same may have been done.

The position assumed by the defendant's counsel is, that that money loaned became pledged to the business, and that the creditors had an equitable lien upon it. I know of no such principle of law, and certainly the wife is not under any such disability growing out of her marital relation, that she cannot receive pay from her husband of money honestly loaned him, where the same is done in good faith. Babcock *v.* Eckler, 24 *N. Y.* 623. The case of Gage *v.* Dauchy, 34 *N. Y.* 293, holds, that the fact of the husband giving his attention and services to managing his wife's property, and assisting her in carrying on her business, does not deprive her of her legal rights in the property, or her first claim to the profits or funds of the business. This is all that is necessary to say in regard to the defendant's requests to charge, and the judge's refusal. There was no error committed in any of these refusals, and none committed upon the trial, and the judgment should be affirmed.

MILLER, J. [After briefly stating the facts.]—Several objections were made upon the trial to the refusal of the judge to charge the jury. It is insisted, that the court erred in refusing to charge, that, if the jury find that the plaintiff loaned the money, in 1857 and 1858, to her husband to enable him to enlarge and extend his business, and he did so use it, he could not, after obtaining the credit from the judgment creditors, for which the execution was issued, so transfer it as to relieve it from the claims of the creditors referred to.

It does not distinctly appear that the money was loaned for the purpose of enlarging and extending the business of the plaintiff's husband. It is true that his business was increased after the money was loaned, and the money was used for that purpose; and, assuming that there is evidence in the case from which such an inference may be drawn that such was the object of the loan, does it follow that the husband could not,

by transfer, secure the money thus loaned? Loans of money are often made for this specific purpose, and persons are frequently started in business by moneys advanced to enable them to obtain goods. The party loaning the money thereby becomes a creditor of the borrower, which entitles him to be secured or paid the same as any other creditor. It does not affect his rights as a creditor, because he loaned the money, and other creditors have trusted the party on the appearance of credit thus obtained. The borrower has the right to prefer the lender to his other creditors, and I am not aware that the law regards such a preference as unauthorized. It has not been held in this State, that such a loan was, of itself, a fraud as against creditors. If made with a view of diverting the property, or for the purpose of protecting it from creditors, who, on the faith of it, have given credit to the party, then, of course, it would be fraudulent, and the transaction could not be upheld. But the request made embraced no such proposition, and called upon the judge to charge a principle which, I think, was erroneous, and was therefore properly refused.

It is also insisted, that the court erred in refusing to charge, in accordance with the defendant's request, that, when the wife places money in the hands of, and under the control of, her husband, and allows him to invest it in trade for his own benefit, the property, as between the wife and the creditors of the husband, becomes liable for his debts, and that she loses the benefit of the statutes, and the common law declares the creditor's rights.

The difficulty in the proposition is, that it assumes that the the wife places the property in the hands of the husband and allows him to invest it in trade, while this does not appear as a conceded fact in the case. She merely loaned it to him with no specified object in view; and, as the jury have found that this was done in good faith, I do not see how such a loan can be considered as an improper diversion of the money, so as to render it liable for the debts of the husband. The request made was properly refused on the ground stated; but I am not prepared to hold that the wife cannot loan her individual money, even for the purpose of investing the same in trade, provided the loan be so restricted as not to connect her with

the husband's business. If she could loan it for one purpose, there is no reason, in my opinion, why she cannot do so for another, and unless she chooses to part with all control over it, or to become a partner in the transaction, she does not by such an act part with her rights which have been conferred upon her by statute.

. So, also, the request to charge, to the effect that if the husband was the servant of the wife in and about the business, and received and retained the advantages and accumulations of his labor, then the plaintiff could not recover, was properly refused. This, with the additional requests made, as to the effect of purchases made by him, out of the proceeds of the business, and the accumulations made by their joint labors, and of allowing the husband to manage and control the property for his wife, and of devoting his time and labor to its accumulations, involve the question, how far the husband may be employed by the wife in the transaction of her business, when she has a separate estate, and is engaged in business on her own account. It has been repeatedly held, by this court, that there is nothing in the marital relation, which prevents the wife from employing her husband as her agent, in the management of her property and estate, and in the transaction of her business; and that such employment does not render her property, or the profits arising from her business, liable to the debts of her husband. Sherman *v.* Elder, 24 *N. Y.* 381; Knapp *v.* Smith, 27 *Id.* 277; Buckley *v.* Wells, 33 *Id.* 518; Gage *v.* Dauchy, 34 *Id.* 293; Merchant *v.* Bunnell.*

These cases show, that the wife's separate estate, and the profits derived from the same, although managed by the husband, as her agent, cannot be made liable for the payment of his debts. The principal question to be determined in such cases, is, whether the transaction between the husband and wife is fair and honest, and is not a mere contrivance designed fraudulently for the purpose of protecting the husband's property from his creditors. The judge, in his charge, fairly submitted to the jury to determine whether the plaintiff, in good faith, embarked in business with her own property, and. charged, that, in determining the question, they had a right to

---

* Reported in this series.

consider the fact, that the husband assisted in the business, and in making sales; that he made purchases for her, which were paid for out of the avails of the business, and that they labored together to some extent, for their joint benefit. This, I think, was all which could be required, and covered the propositions last referred to.

There can be no question as to the right of the wife to employ the husband as her agent, and if there is any difficulty, it is in regard to the requests made, which related to the appropriation of the profits arising from the labors and services of the husband, to the benefit of the wife, and thus increasing, by the employment of his time and talents, the value of her property. This precise point has been substantially decided by this court.

In Buckley *v.* Wells, above cited, where the husband had acted as the agent of his wife, who furnished the capital, it was held, that the application of an indefinite portion of the income to the support of the husband, does not impair the title of the wife to her property, and that no interest in her estate is acquired either by the husband or his creditors, through his voluntary services, as her managing agent. CAMPBELL, J., fully answers the objection, that the skill and labor of the husband, when employed by the wife, enters into and forms a part of the property and increases its value, by remarking: "If the business is successful, granted; but the title is not thereby divested. At most he could have but a lien for wages."

In Gage *v.* Dauchy, 34 *N. Y.* 293, where the wife was the owner of a farm, on which she resided with her husband, and which he carried on in her name, without any agreement as to compensation, it was held, that neither the products of the farm, nor property taken in exchange therefor, could be attached by creditors, as the property of the husband.

The principles decided in the cases last referred to are fully indorsed and upheld by DAVIES, Ch. J., in Merchant *v.* Bunnell, *supra.* These cases effectually dispose of the question now discussed, and render it unnecessary to examine the authorities cited by the appellant's counsel, which, it is claimed, sustain a different theory.

The objection taken, that the agreement by which the hus-

Kluender *v.* Lynch.

band entered into the employment of the wife, on the terms stated by her, was a fraud upon creditors, cannot, I think, be maintained. It appears from the testimony, that he worked in her employment, sold and bought goods in connection with the wife and another person in her employ, and lived in the same building with his wife, and, he being insolvent, the wife provided for his support. The wife paid the workmen whom she employed to manufacture, and had everything under her control.

There was nothing in the manner in which the husband was employed, I think, which made the arrangement fraudulent on its face, and, within the authorities before cited, it can be sustained, provided it was not a device to cheat and defraud the creditors of the husband. Whether such was the case was a question of fact to be determined by the jury intrusted with the decision of the case. Knapp *v.* Smith, 27 *N. Y.* 277, 280.

It is said, that the transfer directly from the husband to the wife was void. It appears that the money and property were paid and delivered in payment of a debt claimed to be due from the husband to the wife, and I see no reason why such a payment and delivery of money and property is not valid and effectual. The husband merely paid the debt which he owed, and, as the plaintiff had a sole and separate estate with which she was authorized to deal as a *feme sole*, there is no good reason why she should not deal with her husband the same as with a stranger, and no occasion to require the intervention of a third party in the payment of her demand.

The defendant took the property wrongfully from the plaintiff, and no demand was necessary before the action was brought.

There was no error committed on the trial, and the judgment must be affirmed.

All the judges concurred.