## Case No. 17,001.

### VOORHIES v. BONESTEEL et al.

[7 Blatchf. 495.][1]

Circuit Court, E. D. New York.　July 22, 1870.[2]

#### HUSBAND AND WIFE — SEPARATE PROPERTY OF WIFE—CARRYING ON TRADE—RIGHTS OF HUSBAND.

1. Under the laws of New York, as interpreted by the courts of the state, a married woman may own property of every description, in the same manner as if she were a feme sole. She may engage in trade, and her labor and her time are not the property of her husband. She may even employ the time and the labor of her husband in the business of using her capital in trade, and she may support her husband out of the profits of her business; but these facts will not make the business or its profits the property of the husband

2. A conveyance of property to a married woman, in fulfilment of an agreement made in good faith between her and the grantor, does not, under the laws of New York, entitle her husband to the property, even though labor and services performed by him formed a part of the inducements to the making of the agreement.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirmed in 16 Wall. (83 U. S.) 16.]

This was a bill in equity, brought by the plaintiff [James C. Voorhies], as assignee in bankruptcy of John N. Bonesteel, to obtain possession of certain personal property alleged to belong to the estate of the bankrupt, and to be distributable in bankruptcy. The bill, after averring the proceedings in bankruptcy, and the appointment of the plaintiff as assignee, averred, that Sophia H. Bonesteel, who was the wife of the bankrupt, had standing in her name upon the books of the Nicholson Pavement Company of Brooklyn, 1,145 shares of the capital stock of that corporation, which were in truth the property of the bankrupt, and should have been included in the bankrupt's inventory, and delivered to the assignee, and applied to the payment of the debts of the bankrupt which had been proved, or were provable, in his proceedings in bankruptcy. The bill then proceeded to set forth the circumstances under which Mrs. Bonesteel became possessed of the stock in question, as follows: In the year 1866, one Jonathan Taylor was owner of a license from the patentee of the Nicholson Pavement to lay that pavement in Brooklyn, and, in that year, employed John N. Bonesteel to negotiate a sale of that license, and, through Bonesteel, did negotiate a sale to the firm of Page, Kidder & Co., of one-half of said license, for the sum of $10,000, and, in consideration of the services rendered by Bonesteel in negotiating that sale, and also for other services rendered by Bonesteel to Taylor, Taylor agreed to assign to Bonesteel the other half of that license. Thereupon, Taylor, on the 7th of December, 1867, by the direction of Bonesteel, and to vest in Mrs. Bonesteel the said one-half interest, and to vest in Page, Kidder & Co., the other half purchased by them, made an assignment of the whole license, conveying one-half to Mrs. Bonesteel and one-half to Page, Kidder & Co. Thereafter, Page, Kidder & Co., and Mrs. Bonesteel, and the members of the firm of William Smith & Co., to which firm Bonesteel had sold one-half of the interest so conveyed to Mrs. Bonesteel, organized the Nicholson Pavement Company, and, upon the organization of the company, and in consideration of the transfer to it of the said license, there was issued to said parties the whole capital stock, in the proportions of their interest in the license, Mrs. Bonesteel receiving, as the owner of one-fourth of said license, 1,150 shares of said stock, being one-fourth thereof, less 400 shares reserved for the working capital of the corporation. Then followed averments respecting other shares of the stock, and the right of Bonesteel to one-fourth of the 400 reserved shares, the right to all of which depended upon the same question. It was averred that Bonesteel did not include this property in his inventory, and that he, as well as Mrs. Bonesteel, denied the assignee's right thereto, and refused to surrender the same. The prayer of the bill was, that the court would decree the defendants to account for, and pay over to the assignee, all sums received by either of them by reason of said transfer of one-half of the interest in said license to Mrs. Bonesteel, and that the defendants might also be decreed to transfer to the assignee the stock of the Nicholson Pavement Company, held by them and each of them. The answer denied that Bonesteel ever owned, or was entitled to, the said one-half interest in the pavement license which was conveyed to Mrs. Bonesteel, or that it was transferred to her at his request, and averred that the said one-half interest, and the proceeds of the sale of one-half thereof to Wm. Smith & Co., and the stock in the Nicholson Pavement Company which was issued to and stood in the name of Mrs. Bonesteel, was and always had been the sole and separate property of Mrs. Bonesteel, and formed no part of the estate of, and was in no way liable to be conveyed to, the assignee, for distribution by him.

George W. Cotterill, for plaintiff.
John Winslow, for defendants.

BENEDICT, District Judge. The bill contains no allegation of fraud. The simple and only position taken by it is, that the one-half interest in the pavement license, which is conceded to be now represented by the stock in dispute, was conveyed by Taylor to Mrs. Bonesteel in trust for her husband, and is now held by her to his use.

This position is not supported by the proofs. There is no evidence to show that either Taylor, the grantor, or Mrs. Bonesteel, the grantee, or John N. Bonesteel, her husband, ever intended or supposed the property in question to be held by Mrs. Bonesteel in trust for her husband. On the contrary, the proofs show that the property was conveyed to Mrs. Bonesteel in pursuance of a prior agreement between her and Taylor, to the effect that she should have such an interest as her own, and that it was received by her without the suggestion from any source that it was to be other than her own separate property. So she has always treated it. She sold a part of the interest to Smith & Co., and received the purchase money herself, and disposed of it as her own. She assumed the position of a corporator in the Nicholson Pavement Company, and, as licensee, transferred the remaining portion of her interest in the license to that corporation. She received from that corporation the stock in question, which was issued to her as her separate property, and she has, in all respects, dealt with the interest in the license, and with the stock, as her own. Nor does the evidence show any participation by her husband in the avails of the property, or any assumption by him of any of the responsibilities attaching to his wife, either as licensee or corporator, or any claim on his part to be in any way directly or indirectly interested in the property in question. Upon the evidence presented, it would be vain to contend that Bonesteel could have maintained an action either against his wife, or against Taylor, to compel a transfer of the

interest in the pavement license to him, or to put him in possession of the stock which his assignee now claims. Indeed, the bill itself avers that Mr. Bonesteel denies that he ever had any right to the stock. How, then, can this plaintiff, who asserts no fraud, but simply asks to receive what Bonesteel, at the time of his bankruptcy, was himself entitled to demand, be adjudged entitled to this property, as property of the bankrupt, which should have been placed in the inventory and delivered with the assignment? Indeed, the position taken in the bill was not taken on behalf of the plaintiff upon the argument. On the argument, the case was treated as resting upon an allegation of fraud. It was claimed to have been proved that the consideration for the conveyance of the one-half interest in the pavement license consisted. at least in part, of the time and labor of John N. Bonesteel, an insolvent. furnished by him to Taylor; and it was claimed that, by reason of this fact, the court must adjudge the property to be held by Mrs. Bonesteel in fraud of the rights of the creditors of Bonesteel, and so transferable to the assignee. But the bill does not charge fraud, and, in the absence of fraud, it would not follow that the interest became the property of Mr. Bonesteel, if the facts were proved as claimed.

A conveyance by Taylor to Mrs. Bonesteel of property belonging to Taylor, in fulfilment of an agreement made in good faith, between Taylor and Mrs. Bonesteel, does not. under the laws of this state, entitle the husband to the property. Nor, would the additional fact —which is the most that can be well insisted, as the evidence stands—that labor and services performed by Bonesteel formed a part of the inducements which led to the agreement, make .Bonesteel the equitable owner of the property, and entitle his assignee to a conveyance thereof. The circumstances, that Bonesteel was insolvent. and that he did render certain services in negotiating a sale of the other one-half interest in the pavement license to Page, Kidder & Co., are proper facts to adduce in support of an allegation of fraud; but they do not make the property conveyed by Taylor to Mrs. Bonesteel the property of Bonesteel.

I might, therefore, as I conceive. here stop, and dismiss the bill. for the reason that the case set up in the bill is not proved by the evidence; but, inasmuch as the case has been treated by counsel as presenting a question of fraudulent intent, and I have attentively studied the evidence in that aspect. I may, with propriety, add the result of my consideration.

Before adverting to the evidence in this aspect, it will be well to notice the changed position of married women under the laws of this state. According to those laws, as interpreted by the courts, a married woman may own property of every description, in the same manner as if she were a feme sole. She may engage in trade, and her labor and her time are not the property of her husband. She may even employ the time and the labor of her husband in the business of using her capital in trade, and she may support her husband out of the profits of her business; and neither the fact that she employs her husband, nor the fact that the labor and skill of the husband contributes to the success of the business, nor the fact that the husband and his family are supported out of the profits of the business, will make the business or its profits the property of the husband. Gage v. Dauchy, 34 N. Y. 293; Buckley v. Wells, 33 N. Y. 518; Knapp v. Smith, 27 N. Y. 277. Mrs. Bonesteel could, therefore, legally agree with Taylor for a transfer to her of an interest in the pavement license. in consideration of her services, and the license would be hers, if such were in reality the contract of the parties. She might even take it as a gift from Taylor, and hold it as her own. It does not follow, as a conclusion of law, from the fact that a conveyance is voluntary, that it is fraudulent. In this state, the question of fraud is made, by statute, a question of fact, and not dependent upon the absence of a valuable consideration. It is in view of this state of the law, that the circumstances attending the transaction in question must be considered. These circumstances are hardly in dispute. John N. Bonesteel had been for some years insolvent, without money or business. His family had been, for the most part, supported by means of advances made to Mrs. Bonesteel by her father, who is a wealthy man, and who, in 1866, advanced to his daughter about $3,000, to be used as a capital in a business to be conducted by John N. Bonesteel as agent of his wife. Bonesteel was so employed when his services in introducing the Nicholson pavement in New York City were sought by Jonathan Taylor, who then held a license to lay that pavement in New York City, Brooklyn, and other places. Accordingly, in the spring of 1866, Bonesteel began to devote time and labor to the Nicholson pavement in New York City, under an agreement with Taylor in respect to profits, which finally produced him, for these services, about $1,000 in money. But Mrs. Bonesteel was dissatisfied with the neglect of her business for that of the pavement. and made objection personally to Taylor, on the ground that her business would be given up without corresponding profit to her. Bonesteel also objected to proceeding without the consent of his wife, because of the fact that. for some time, the family had been dependent on her, and he was using her capital for her. Thereupon. Taylor, who, as licensee, was interested in every extension of the Nicholson pavement aside from the profits of any particular contract, and who knew that Mrs. Bonesteel was so connected by marriage as to be able to aid in bringing influential persons in Brooklyn to advocate the introduction of the pavement. gave Mrs. Bonesteel to understand that. if her objections were withdrawn, and her influence with Mr. S. B. Chittenden, of Brooklyn, who was her connexion and friend, thrown in favor of the pavement. he would give her an interest in the license to lay the pavement

in Brooklyn, and induced Mrs. Bonesteel to believe that, by proper exertion and the aid of her friends, the license for Brooklyn, which had hitherto been unused, could be made to realize a profit. In accordance with this understanding, Mrs. Bonesteel withdrew her objections, the commission business was given up, at some small loss to Mrs. Bonesteel, it would appear, and Mrs. Bonesteel brought her influence to bear upon her influential connexion with apparent success. It is true, that no conveyance was at this time executed to Mrs. Bonesteel, nor was the agreement made definite as to the portion which she was to have, but all the parties understood her to be interested to some extent, and Taylor swears that, in his mind, it was to the extent of one-third, but that, in the end, he made the portion one-half, upon consideration of the fact that a sale of his other one-half for $10,000 had resulted from the influence of Mr. Chittenden, her connexion. Mr. Chittenden is careful to say that he never made it a condition of his action that Mrs. Bonesteel should be interested in the license for Brooklyn; but, after he had satisfied himself of the merits of the pavement, he advocated it earnestly, and caused his newspaper to advocate it; and he understood Mrs. Bonesteel to be interested, and himself urged and insisted that she should have one-half of the license. Mr. Chittenden also advised Mrs. Bonesteel in regard to the sale of one-half of her interest after it was acquired; and he discounted for Mrs. Bonesteel the notes which William Smith & Co. gave her for the portion bought by them from her. Under these circumstances, on the 7th of December, 1867, Taylor made the conveyance which transferred the license to Page, Kidder & Co. and to Mrs. Bonesteel, in the proportion of one-half to each. These facts clearly appear, and I find nothing in the evidence to deprive them of their force, or to indicate that either Mrs. Bonesteel, or Mr. Taylor, or Mr. Chittenden, or Bonesteel considered the one-half interest as belonging to Bonesteel, or had any intention to deprive the creditors of Bonesteel of any rights, or to cover or conceal any property from them.

A further fact should be noticed as important in determining whether the transaction between Taylor and Mrs. Bonesteel was in truth what it appeared to be, or was a collusive device to defraud the creditors of Bonesteel, and that is, the nature and value of the property conveyed to Mrs. Bonesteel. It was simply an interest in a license to use a certain patented article in Brooklyn, on payment of a royalty to the patentee, and that article a street pavement, for which, in effect, there was but a single possible purchaser—the city. None of the pavement had been used by the city, and the value of the license, at the time of the arrangement with Mrs. Bonesteel, was, therefore, wholly conjectural, and entirely dependent upon the exertions to be thereafter put forth to commend the pavement to the public and the city authorities. No witness speaks of any sum fixed on as the value of the interest, but Mr. Chittenden says

that he refused to give anything for it, and deemed it of very small value. It cannot, therefore, be said that, in the hands of creditors, as property to secure the payment of their debts, this interest would have had any value at the time of the arrangement with Mrs. Bonesteel. Nor can the alleged consideration received from Mrs. Bonesteel be claimed to be disproportionate in comparison with the property. Furthermore, Taylor was a stranger in Brooklyn, and it does not appear that he ever intended to do more than to sell his license. In fact, he did sell his whole interest for Brooklyn at an early day. The sale of one-half of the interest to Page, Kidder & Co. was, therefore, a great advantage to the interest held by Mrs. Bonesteel, for the buyers were dealers in coal, tar and lumber, and were able at once to engage in the business of laying the pavement, if the authorities could be induced to accept it. It is, therefore, entirely reasonable to suppose that Mr. Bonesteel, knowing of his wife's arrangement with Taylor, and the effect of such a sale upon her interest, should exert himself to bring about the sale to Page, Kidder & Co.; and the fact that he did so, is in no way inconsistent with the idea that the interest was, in good faith, the actual property of his wife. Nor could the fact that Mr. Bonesteel did so exert himself, work to the injury of Mrs. Bonesteel, by depriving her of a portion of the interest which she finally received in pursuance of the agreement made by Taylor some time before. These circumstances, when fairly considered in their real relations, do not appear to me to indicate fraud, and could not, in my opinion, justify the court in deciding, against the positive statement of Taylor, who has no interest in the controversy, and against the similar statement of both Mr. and Mrs. Bonesteel, that the object of the conveyance to Mrs. Bonesteel was to cover the property, and that the reason for making it was that Bonesteel was insolvent.

But, it is said that Mrs. Bonesteel herself swears that the consideration of the conveyance to her was the time that her husband had given to Taylor, and thus proves the transaction to have been a cover. But this answer of Mrs. Bonesteel to a single interrogatory should be taken in connection with the rest of her testimony, and, so considered, it is far from sufficient to justify the conclusion sought to be drawn from it.

Again, it is said, that the claim that any influence of Mrs. Bonesteel in favor of the pavement formed the consideration, is absurd, because, when Taylor conveyed one-half to her, he conveyed the other half to Page, Kidder & Co., and, therefore, could derive no benefit from her future exertions. But, the conveyance to Page, Kidder & Co. was long after the agreement between Mrs. Bonesteel and Taylor that she should have an interest, and, as Taylor swears, that sale for $10,000 was the result of his understanding with her. This seems to me reasonable and natural. Taylor wished to sell this license for Brooklyn. To make it marketable, he desired the influence of Mrs. Bone-

steel and her friends in urging the adoption of the pavement. To get rid of her opposition, and to secure her influence, he gave her one-half, and thus realized $10,000 in cash for the remaining one-half of a license which, up to that time, had proved valueless and unsaleable. That Bonesteel himself should labor to effect the sale to Page. Kidder & Co., and aid, to the extent of his ability, in advocating the pavement, is also natural, for he might foresee that the pavement business, if once started by those parties, would furnish him with employment, and enable him thereafter to contribute to the support of his family. Everything, therefore, which the proofs show him to have done in regard to the sale to Page, Kidder & Co., and to advance the pavement, is consistent with his statement that the license belonged to Mrs. Bonesteel and not to him.

When thus considered, the facts of the case explain the omission in the bill of any averment of fraud, and sustain the averment of the answer, that the property in question is not the property of Bonesteel, but, in truth and in fact, the separate property of Mrs. Bonesteel, bought in good faith by her from Taylor.

In closing this opinion, I have only to add, that the case has received my best attention, not only on account of its importance, but by reason of the fact that the transaction in question had been before considered elsewhere, and a different result arrived at, the proceeding being by a petition, which was subsequently set aside for informality. In re Bonesteel [Case No. 1,627]. The case here, however, is different from the one on petition, not only in the pleadings, but also in the proofs.

Upon the pleadings and proofs, as they stand before me, I cannot arrive at a conclusion favorable to the plaintiff, but must dismiss the bill.

[The case was taken by appeal to the supreme court, where the decree of this court was affirmed. 16 Wall. (83 U. S.) 16.]