1815.

METHODIST
EPIS.CHURCH
    v.
JAQUES.

June 27th.

*The Trustees of the* METHODIST EPISCOPAL CHURCH, *in the city of New-York, and others, against* J. D. JAQUES, R. JAQUES, *and* H. CRUGER.

> Where a deed of marriage settlement was executed in the presence of witnesses, and laid on the table, and the marriage took place immediately thereafter, in the presence of all the parties; and the deed, without any other or more *formal* delivery, was taken by the wife, the *cestuy que trust*, and kept in her possession until her death; this was held, under the circumstances, to be a good and valid deed.
>
> A husband is accountable for the personal estate of the wife, secured to her separate use by a deed of marriage settlement, and which has come into his hands during the coverture, but not for *interest* on moneys he may have received for debts due to her. The husband is also accountable for the rents and profits of the wife's real estate, received by him; and lands purchased by him with the moneys of the wife, are deemed to be held, in *trust*, for her, though purchased in his own name; and a third person, to whom the husband had conveyed an estate so purchased, with notice of the manner of his acquiring it, was held to be chargeable with the trust; but the trustee is to be allowed for any beneficial and permanent improvements made by him on the estate.
>
> Where, by a marriage settlement, the whole real and personal estate of the wife is secured to her separate use, the husband is, notwithstanding, bound to maintain his wife and family during the coverture, and cannot make the expenses a charge on her separate estate; and the consent, or agreement, of the wife, during coverture, that the expenses should be borne by her separate estate, is null and void.
>
> But the husband is entitled to an allowance for moneys expended in necessary reparations of the wife's separate estate, and for any specific appropriation of her property, with her assent or direction, for her benefit, (not being for the ordinary maintenance of her or his family.)

THE bill was for an account of the real and personal estate of *Mary Jaques,* deceased, late the wife of the defendant, *J. D. Jaques,* and who was formerly the wife of *William Alexander,* deceased. It stated, that *Mary Jaques,* at the time of her intermarriage with the defendant, *J. D. Jaques,* was seised and possessed of a large real and personal estate, particularly mentioned in the bill; that, in contemplation of the marriage about to take place between her and *J. D. Ja-*

*ques*, a deed of marriage settlement was made and entered into, between *Mary*, of the first part, *John D. Jaques*, of the second part, and *H. Cruger*, of the third part, dated the 25th of *September*, 1805, by which the said *Mary* conveyed all her estate, real and personal, to the defendant, *Cruger*, to the use of the said *Mary* until the marriage should take place, and, from and after the marriage, to the use of such persons, and for such estates, as she, with the concurrence of her intended husband, should, by deed, attested by two witnesses, or by her last will and testament, limit and appoint; and, until such appointment, to the use of *H. Cruger*, and his heirs, during the life of the said *Mary*, to enable her to take the profits thereof, free from the control of her husband, and at her absolute disposal; that, immediately after the execution of the deed, the marriage took place between the parties. The bill alleged that, after the intermarriage, *J. D. Jaques*, during the lifetime of his wife, by artful contrivances, possessed himself of her personal estate, and of the rents and profits of her real estate, and applied the same to his own use, changing the securities for money, and taking new securities in his own name; and appropriated the money belonging to his wife, in purchasing real estate, the titles to which he took in his own name, and claimed them as his own; that, among the securities so held by the said *Mary*, was a bond of one *Heyl*, for a large sum, and a mortgage of two leasehold, and one freehold, estate; which securities *J. D. Jaques* having got into his possession, proceeded, in his own name, and procured a decree for the sale of the mortgaged premises; that he sold one of the leasehold estates to a third person, for 1,980 dollars and purchased in the other for 1,510 dollars, and conveyed it to his brother, *Robert Jaques*, the defendant; and that he also purchased in the freehold estate, and took a deed in his own name; which two last estates the plaintiffs claim as part of the estate of *Mary Jaques*, having been paid for out of her personal estate; and that, before the sale of the mort-

gaged premises, the defendant, J. D. Jaques, received the rents and profits.

That Mary Jaques, intending to execute the power reserved to her by the deed of settlement, did, with the concurrence of her husband, by deed, dated the 12th of September, 1812, convey all her real estates to the defendant, Robert Jaques, in fee, upon trust, that, after her decease, he should sell the same, and out of the proceeds; after paying the expenses, should dispose of the surplus as follows : to wit, one third to the trustees of the Methodist Episcopal Church ; one third to the children of Thomas Brown, and his wife, in equal shares ; and the remaining third to the defendant, J. D. Jaques. That after the execution of that deed, Mary Jaques, on the 25th of September, 1812, made her last will and testament, by which she gave several specific legacies to the plaintiffs ; the children of Thomas Brown and his wife, to Jane Brown, and others ; and all the residue of her estate she gave, the one third thereof to the plaintiffs, the trustees of the Methodist Episcopal Church ; one third thereof to the plaintiffs, the children of the said Thomas Brown and wife ; and one third to the defendant, J. D. Jaques ; and appointed Paul Hicks and Thomas Brown, plaintiffs, and John D. Jaques, defendant, executors of her will. That after the will was duly proved, and the specific legacies paid and delivered, the plaintiffs, Hicks and Brown, executors, applied to J. D. Jaques, the co-executor, who had the custody of the papers, securities, and personal effects of the testatrix, to exhibit the same to them, in order that an inventory might be duly made ; but the defendant, J. D. Jaques, refused to do so, unless the plaintiffs would first agree to pay him a demand of about 12,000 dollars, which he said he had paid for maintaining the said Mary Jaques, her horses and carriages, &c.

The bill set forth the particulars of the residuary personal estate of the testatrix, as far as it had come to the knowledge of the plaintiffs ; and prayed an account of the same, and a

discovery of what moneys, or securities for money, belonging to *Mary Jaques* at the time of her marriage, had come to the hands of the defendant, *J. D. Jaques,* and how he had disposed of the same ; and also of the rents and profits of the real estate received by him ; and that the title-deeds might be brought into court ; that he might be compelled to surrender the trust of the real estate, or give security for the due performance thereof; that a receiver of the estates may be appointed, and the defendants enjoined from disposing of any part thereof; and for general relief, &c.

The defendants, in their answers, admitted that *Mary Jaques,* before, and at the time of her intermarriage with *J. D. Jaques,* was seised of certain real estates, which they mentioned ; and was possessed of personal property, consisting of slaves, household furniture, horses, carriages, moneys, securities for money, &c., amounting to about twenty-two thousand dollars. That the deed of settlement, of the 25th of *September,* 1805, was signed and sealed, but that it was never delivered, and, therefore, they denied its validity. They admitted the mortgage of *Heyl,* and a judgment against him for 2,772 dollars ; and that the mortgage and judgment were put into the hands of *J. D. Jaques,* by *Mary Jaques,* to collect ; and that he was let into the receipt of the rents and profits of the mortgaged premises; that *J. D. Jaques* stated and settled an account with *Heyl,* the balance of which, on the 1st of *July,* 1806, was 8,026 dollars and 97 cents. The defendants, also, admitted the sale of the mortgaged premises, and the purchase and conveyances, as stated in the bill, setting forth the particulars of the transaction; that *Robert Jaques* had notice, at the time *J. D. Jaques* conveyed to him the leasehold lot in *Murray-street,* of the manner in which *J. D. Jaques* obtained title to the leasehold premises under the mortgage ; and that the lease of the lot in *Murray-street* was renewed, in 1812, for 42 years, and assigned to *Robert Jaques ;* and that the mortgaged premises purchased in by *J. D. Jaques,* at the master's sale, were paid for by

deducting so much from the sum reported due by the master; and that *J. D. Jaques* informed *Mary*, his wife, that he had received the said money from *Heyl*, or property equivalent, with which she appeared satisfied. That *J. D. Jaques* never paid or accounted to her for the money or property so received and obtained by him. The defendant, *J. D. Jaques*, admitted that he received 808 dollars and 71 cents, for rents and profits of the mortgaged premises, before the sale, which he had not paid over. That his marriage was kept secret 11 months after it took place, during which time his wife transacted her business by her former name, *Mary Alexander*; and he set forth further, the particulars of his account of expenses for maintaining her, her horses, &c., during her life, and for family expenses, &c.

The above statement is thought sufficient to a clear understanding of the decision of the court, without entering into a detail of the proofs taken in the cause.

*Riggs*, for the plaintiffs.

*T. A. Emmet*, and *Harris*, for the defendants.

The counsel, on both sides, went into a particular examination of the proofs in the cause, and the accounts exhibited. The following are the material points insisted on in the argument.

*For the plaintiffs*, it was contended, 1. That the deed of settlement was valid, and secured to *Mary Jaques* the whole of the real and personal estate; that the deed was frequently recognised by *J. D. Jaques*, during the coverture, and was referred to in her will, of which he was executor, and had acted as such. Though not delivered into the hands of the trustee, but kept by the *cestuy que trust*, it was, nevertheless, a good deed. (9 *Ves.* jun. 380.)

2. That a husband is bound to maintain his wife, and

that the marriage settlement made no alteration in the rule of law, in that respect; the defendant, *J. D. Jaques,* could not, therefore, be allowed to deduct the charges of her maintenance, or the family expenses, from the sums received out of her personal property, and for which he was accountable. (2 *Atk.* 513.) The wife could make no contract with her husband, in this respect, nor vest her separate property in him. (2 *Ves.* jun. 488. 4 *Bro. C. C.* 409.)

3. That the purchases of the mortgaged premises were made with the money of *Mary Jaques,* and both *J. D. Jaques* and *Robert Jaques* must, in the whole of this transaction, be regarded as trustees for those entitled under her will. The surrender of the old lease, and taking a new one, did not vary the rights of the parties, but the second lessee stands on the same footing as the first. (2 *Atk.* 74. *Sugden's Law of Vend.* 444. 427. 9 *Vesey,* jun. 375.)

*For the defendants,* it was argued, that if the bill could be sustained, an account must be taken before a master ; and the only object for the court, at this time, would be to settle a few principles, for the guidance of the master in taking the account. The point, as to the purchase of the leasehold, and renewal of the lease, ought to be left on the equity reserved, on the coming in of the report. The principal question was, what allowances were to be made to *J. D. Jaques* for the maintenance of his wife, and the family expenses. But if the settlement deed was not valid, as they contended it was not, then the bill must be dismissed. There was no pretence that the deed was ever delivered. There was no proof of a delivery. In *Chamberlain* v. *Stanton,* (*Cro. Eliz.* 122.,) where a deed was signed and sealed by the defendant, and laid on a table, and the plaintiff, afterwards, came and took it up, the court held it was not the defendant's deed, there being no *formal* delivery of it.

That *J. D. Jaques* cannot be a trustee of the property purchased by him. *Robert Jaques* was a fair purchaser, and cannot be held to be a trustee. But on the main point,

how far the defendant, *J. D. Jaques*, is to be allowed for the expenses of maintaining his wife and family, the evidence shows conclusively, that it was understood, and agreed by Mrs. *Jaques*, that those expenses were to be borne by her; and her estate ought, therefore, to be made liable for them. At any rate, a husband is not liable to pay *interest* on the amount of her estate received by him. (2 *Vesey*, jun, 698. 2 *P. Wms.* 82, 83.)

THE CHANCELLOR. This case having been brought to a hearing on the pleadings and proofs, it seemed to be a conceded point, that there must be a reference to a master to take and state an account between the parties; and the object of the discussion was to ascertain and settle the principles upon which the account was to be taken.

1. I am of opinion, in the first place, that the marriage settlement of the 25th of *September*, 1805, is to be considered as valid and binding. It was executed by Mrs. *Jaques*, prior to the marriage, with the usual solemnities, and laid upon the table, in the presence of all the parties to it. It was executed in reference to the marriage, which took place immediately thereafter, and while the deed so remained upon the table. The deed, under these circumstances, is to be considered as duly consummated; and it would operate as a fraud upon the wife, and be repugnant to one of the considerations of the marriage contract, if the husband could be permitted to set aside the deed, for the want of some technical formality in the delivery. The delivery was here sufficient in judgment of law, and the taking of the deed, afterwards, by the wife, into her possession, is to be considered as done with the assent of the trustee, and for safe-keeping, and could not impair its validity. The husband, during the coverture, recognised the deed by being a party to the conveyance to *Robert Jaques*, made in pursuance of its provisions; and, since the death of his wife, he has recognised it by proving and acting under her will, which re-

fers to that settlement, and declares the will to be made in pursuance of it.

2. The deed of settlement being valid, and to be supported in this court, the defendant, *John D. Jaques*, is to account for the whole personal estate of his wife which may have come to his possession. But, considering the confidential nature of the marriage connexion, and the agency of the estate, which usually and almost necessarily results from it, it would be too rigorous to charge the husband with interest on the moneys which may, from time to time, have been received. Some of the cases go so far as not to require the husband to account further than for the principal of the wife's separate personal estate, in cases where moneys have been received, and not to account for the interest which he may have received on the debts due to her. (*Powell* v. *Hawkey & Cox*, 2 *P. Wms.* 82. *Squire* v. *Dean*, 4 *Bro.* 326. *Smith* v. *Lord Camelford*, 2 *Vesey*, jun. 698.) This liberal rule I am willing to adopt in this case, especially as Mrs. *Jaques* was very indulgent to her husband as to the management of her estate, without making complaint either to her trustee or to this court. I shall presume, that such receipts of interest (if any) were expended for the benefit or accommodation of the wife, and shall not impose on the husband the burden of duly accounting for every particular *item* of such expenditure.

3. The defendant, *J. D. Jaques*, is to account for all the rents and profits which he may have received of her real estate, including the leasehold estate, and the freehold estate purchased in by him, under the operation of *Heyl's* mortgage. These lands were purchased by him with the moneys of his wife, and the purchases, consequently, enured to her benefit as a resulting trust. The defendant, *Robert Jaques*, is, also, to account for the rents and profits of one of these estates, purchased by him of *J. D. Jaques*, and unpaid for. He appears to be justly chargeable with notice of the trust

1815.

METHODIST
EPIS.CHURCH
v.
JAQUES.

when he made the purchase ; and, consequently, the trust went with the purchase. But, under the circumstances of the case, it would be reasonable, and I direct that either trustee be credited, by the master, in taking the account, with any beneficial and permanent improvements made by him upon the trust estate.

4. No allowances are to be made to the defendant, *J. D. Jaques*, for the maintenance of his wife and family, during the coverture, that being a duty chargeable upon him as husband, and in no respect chargeable upon the wife's separate estate. Such an allowance would be a fraud upon the marriage settlement, by which it was expressly declared, that the husband was not to have any right, or interest, in law or equity, in or to any part of her estate, but the same was to be subject only to such uses as she should declare by deed, and to her separate and only use and benefit. The estate was not to be subject to his control or engagements ; and, to render it chargeable with the maintenance of her or his family, would be in violation of the settlement, and defeat or impair its provisions. I have not, therefore, paid any attention to the parol proof of the confessions of the wife during the coverture, as to any agreement that the family expenses were to be borne by her separate estate. Such confessions are in contradiction to the solemn contract of the parties, by deed, when they were separately capable of making such a contract ; they must be viewed with the utmost jealousy, as made under improper influence, and cannot be permitted to be set up by the husband to impair the rights of his wife under the settlement. The utmost that I can do in this case is, to allow the husband to be credited with any necessary reparations bestowed by him on any part of her estate ; and with any particular specific appropriation of her property, (not being for the ordinary maintenance of her or his family,) which may have been made by her special assent and direction, in the given case, and, apparently, for her benefit. In one case (4 *Bro*. 409.) an allowance was

made to the husband, out of the wife's separate estate, for *extra* expenses in her maintenance; but the burden was there peculiar and extraordinary, on account of mental derangement.

5. It would be proper, in this case, and for the benefit of all the parties in interest, that the real estate left by Mrs. *Jaques*, including the lands so held in trust for her, should be sold, and the proceeds brought into court, to the end that the same may be distributed according to the directions in the deed and will of Mrs. *Jaques*.

Let a reference be, therefore, made to a master, to take and state an account, subject to the directions here given; and let an order be entered for the sale of the real estate, &c.

Decretal order accordingly.(a)

(a) S. C. *ante*, p. 65.