THOMAS T. BUCKLEY and others, Appellants, *v.* JULIA WELLS, Executrix of William Wells, late Sheriff of Rensselaer, Respondent.

Under existing statutes, a married woman may manage her separate property through the agency of her husband, without subjecting it to the claims of his creditors.

She is entitled to the profits of a mercantile business, conducted by the husband in her name, when the capital is furnished by her, and he has no interest but that of a mere agent.

The application of an indefinite portion of the income to the support of the husband, does not impair the title of the wife to her property.

No interest in her separate estate is acquired, either by the husband or his creditors, through his voluntary services as her managing agent.

THE appeal was from a decision of the Supreme Court in the third district, affirming a judgment directed by the referee, Mr. Gale.

The following are the findings:

*First.* Edwin Smith and Charlotte A. Smith are, and ever since 1835 have been, husband and wife.

*Second.* In 1849 Mrs. Smith received, as legatee under her mother's will, about $2,400, *of which about $2,000 was her husband's note for that amount.*

*Third.* Afterwards, Mr. Smith failed, and made a general assignment in trust for creditors, and in 1850 Mrs. Smith received, as a creditor of his, under said assignment, about $2,300, having been preferred in said assignment.

*Fourth.* Afterwards, in the fall of 1850, a mercantile business was commenced, nominally by Mrs. Smith, in the name of "E. Smith, agent," at Schaghticoke Point, in Rensselaer county, where Mr. and Mrs. Smith resided, and such business was continued from that time until the seizure under execution hereinafter mentioned.

*Fifth.* The first purchases in said business were groceries, to the amount of about $1,000, and were cash purchases. The business was afterwards extended to include dry goods, etc., and subsequent purchases to those first made were generally upon credit.

*Sixth.* The entire capital employed in said business, except money borrowed in the name of "E. Smith, agent," and what arose from profits therein, was contributed by Mrs. Smith from her said separate estate.

*Seventh.* The arrangement between Mr. and Mrs. Smith, under which said business was conducted, was verbal, and made at the commencement thereof, and was, that Mr. Smith should take Mrs. Smith's money and do business with it for her as her agent, and that she should give him his board and clothing for his services.

*Eighth.* The business was conducted solely by Mr. Smith, in the name of "E. Smith, agent," and *nominally for his wife as principal;* and her services were not employed therein.

*Ninth.* Mr. and Mrs. Smith had several children, and with their children were supported out of said business and its profits, taking goods and money from the store for that purpose as occasion required, and no account was kept between Mr. and Mrs. Smith, or, as appears, of such family expenses.

*Tenth.* About November 17, 1858, and while said business was being carried on as aforesaid, at Schaghticoke Point aforesaid, and there was a stock of goods employed therein, the defendant, William Wells, then being sheriff of Rensselaer county, seized upon said stock of goods under executions issued to him as such sheriff upon certain judgments against said Edwin Smith.

*Eleventh.* Afterwards, the most of said goods so levied upon were sold by said sheriff to satisfy said executions, and the residue left by him in a somewhat damaged condition.

*Twelfth.* The goods thus taken and sold by said sheriff amounted in value, including the damage to those unsold, to five thousand dollars, as of the date of said seizure, as nearly as I can estimate the same.

*Thirteenth.* Afterwards, about January 24, 1860, Mrs. Smith, by an assignment in writing of that date, assigned to the plaintiffs herein her alleged cause of action, arising out of the facts aforesaid.

The referee gave judgment for the defendant, and the judgment was affirmed on appeal (42 Barb., 569).

*William A. Beach,* for the appellants.

*John A. Millard,* for the respondent.

PORTER, J. The facts are stated with great perspicuity in the findings of the referee. The testator, as sheriff of the county of Rensselaer, levied on the goods of the wife, in virtue of executions against her husband. The property consisted of the stock in a country store, of which she was the sole proprietor. The husband conducted the business in her behalf, in the name of "E. Smith, agent," and nominally, if not really, for her as his principal. The entire capital was contributed from her separate estate, except money borrowed in the name of "E. Smith, agent," and the profits accruing from the use of such capital. The husband never owned any portion of the property, and never professed to own it. The style in which the business was conducted was notice to the public that he was acting as a mere agent, his wife being the principal in name, as upon these facts she was also in law. No question of fraud is raised by the findings. The whole family received their support from the business and its profits, taking goods from the store as occasion required. No account was kept between them. The law requires none to be kept, between parties in the relation either of debtor and creditor, or of husband and wife. The effect of the whole matter was, that she supported her husband; and though the law does not enjoin this on the wife as a duty, it does not prohibit it as a wrong. If the property had come from him, these would have been badges of fraud; but as it all came to her by inheritance, she was merely exercising over her own property, that dominion which it was the purpose of our statutes on this subject to secure. If she had conducted the business through a different agent, no one would have thought of questioning, either her title to the property, or her right to support her husband, without forfeiting her inheritance.

Whatever may have been the practical effect of these sta-

tutes in particular cases, it certainly was not their object to introduce discord in the marital relation, or to disable husband and wife from interchanging offices of mutual service and affection. If we were to hold that a married woman could not avail herself of her husband's agency in the transaction of her business, nor apply a portion of her property to his support if occasion required, we would be giving our sanction to a rule, in plain contravention of the policy in which these statutes had their origin.

A different view very commonly prevailed at the time this cause was heard and decided, and it derived support from the tendency of some of the earlier decisions; but the question has since been disposed of in the case of *Knapp* v. *Smith* (27 N. Y., 277). It was there held, upon full consideration, that, under the statutes of 1848 and 1849, and independent of the act of 1860, a woman acquiring property from a third party, during coverture, could manage it through the agency of her husband, and hold the profits and increase to her separate use. In that case, as in this, the husband derived his support from the property of the wife, and received no other consideration for his services; but it was held that this did not impair her title to that, which belonged to her and never belonged to him.

It is insisted, on the authority of a *dictum* in the case of *Sherman* v. *Elder* (24 N. Y., 383), that, where the wife permits her property to be blended for the purposes of trade, with merchandise belonging to her husband, it is liable to seizure for his debts. Without considering the question, whether the proposition can be maintained, without material qualification, it is sufficient to say that no such issue is presented here, as the wife was the sole proprietor of the entire stock of goods.

It is claimed that the transfer of the cause of action by Mrs. Smith vested no interest in the plaintiffs, either at law or in equity. This was not the ground on which the case was decided; but if the question was directly before us, we should have no hesitation in saying that the action was properly brought by the plaintiffs, as the real parties in interest. The

referee finds, as matter of fact, that the plaintiffs were the assignees of the wife. The instrument is not set forth; but the case discloses the fact, that she was indebted to them at the time of the assignment. We entertain no doubt that, irrespective of the act of 1860, the transfer of the claim by the wife to her creditors vested the equitable interest in them, and that the action was properly brought in their names. (*Sherman* v. *Elder*, 24 N. Y., 381, 384; *Knapp* v. *Smith*, 27 id., 277.)

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

CAMPBELL, J. One Edwin Smith failed as a merchant, and became insolvent. His wife, Charlotte A. Smith, was the owner of a separate estate, consisting of between two and three thousand dollars in money, which she received as legatee under the will of her mother. The parties were married in 1835, but the property was not received by the wife until 1849. They had a family of six children. An arrangement was entered into, by which a new mercantile business was to be commenced and carried on, with the wife's capital and on her credit, but in the name of " E. Smith, agent." The business was to be that of the wife, and the husband's compensation was to be his board and clothing. Under this arrangement, the business was conducted for several years — the husband informing those he dealt with, and especially those of whom he asked credit, that he was acting as agent for his wife; and the wife and children were supported by the business, and from time to time took goods from the store as needed for their use and support, and without any account being kept of such goods. The entire capital, except such as may have arisen from profits and from money borrowed, was contributed by the wife, out of her separate estate. The wife took no part in the management of the store. The property was levied on and sold under executions issued on old judgments against the husband; and this action was brought by the assignees of the wife against the sheriff. The referee found, as a conclusion of law, that the plaintiffs were not enti-

tled to recover, and ordered judgment for the defendant for the costs, and which judgment was affirmed.

The referee does not find that there was any fraud in the transaction. Indeed, it would be difficult to predicate fraud upon such an arrangement. The wife of an insolvent man, having a small separate property, derived from her mother, is naturally desirous that her husband may be engaged in some business, by which, in connection with her estate, a support may be provided for a large family of children. The husband has been a merchant. The wife is willing to embark her property in that business with which her husband was familiar, hazardous though it may be; and she empowers and authorizes him to carry on business for her and on her money and credit, holding himself out to the world as her agent. There was nothing fraudulent in that. There is no law in this State which mortgages to the creditor either the person or the labors of his debtor — no longer a law which consigns the innocent and unfortunate to confinement within prison walls. The duty rests upon him to use his best efforts for the payment of his debts; but there is a duty which he owes alike to the public and to his family which is sacred — and that duty is, to provide for the nurture, education and support of his children. He is said to be worse than an infidel, who neglects it. In seeking employment for that purpose, he may apply to the wife, if she have a separate estate, as well as to a stranger. If the law allows her to hold property — her own at her marriage, or coming from others beside her husband and free from his control — of necessity, she must be permitted to manage it herself, or she may employ others to act for her. As to that separate estate, she and her husband are as distinct before the law as if the marital relation did not exist. As to that property she acts as a *feme sole*, and may deal with her husband as with a stranger, and may, therefore, necessarily employ him and compensate him for its management. As the law was formerly, when the personal property of the wife became the property of the husband so soon as he reduced it to possession, it is easy to see how, when the wife voluntarily gave up the possession to him, such an act

might be considered as an abandonment of ownership on her part, and a free gift to her husband. But now, when the wife holds her property as independent of the ownership and control of her husband as of a stranger, it seems to me to be a manifest perversion of the laws enacted for her benefit and protection, to declare, that, when she employs her husband as her agent, and intrusts the custody of the property to him, to buy and to sell, and, if possible, to get gains for her, thereby she must be considered as having made a free gift of the property to him. If it be a free gift, and the title and ownership is in the husband, so that his creditors may seize and sell it for the payment of his debts, then the husband, it would seem, in violation of his trust, might dispose of the property, as absolute owner, for his own exclusive benefit, and to the exclusion of any right on the part of his wife. This is neither right in morals nor in law. But it is said the wife owes allegiance to her husband, and is bound to serve him, and her time and her labor belong to him, and, therefore, he cannot be treated as her servant or agent. When such a rule existed, the wife could not hold in her own right any property, free and clear of her husband's control, except by the intervention of trustees, and, of course, there was not and could not be any direct employment of him by her in the management of her property. But a new law has changed the rule. Whether, as in the case before us, the wife would be bound by the engagements which the husband entered into as her agent, is a question which concerns rather the creditors of the wife than the creditors of the husband. His creditors have no right to complain if persons are found who are willing to give credit to the wife. If they cannot enforce their claim at law against her, it is their own misfortune, and does not concern or affect the rights of the husband's creditors; and it is difficult to see how it thereby tends to vest the title of the property purchased for her, and for which credit is given to her, in her husband. It is also said that the skill and labor of the husband, when employed by the wife, as in this case, enters into and forms, as it were, a part of the property, and increases its value. If the business is successful,

granted; but the title is not thereby divested. At most, he could have but a lien for his wages. The whole case turns upon the question, whether a wife, having separate property, can employ her husband as her agent. If she can, then the objections raised cannot avail as a defense. This question was distinctly settled in *Knapp* v. *Smith* (27 N. Y., 277), where the law is very distinctly laid down, and where it was held that a married woman, having property of her own, could manage it by the agency of her husband, or any other, and hold the profits and increase to her separate use. What was said in *Sherman* v. *Elder* (24 N. Y., 381), and which might be considered in conflict with *Knapp* v. *Smith*, was but the *dictum* of the judge delivering the opinion, and does not appear to have been concurred in by the other members of the court; and the point was not decided in that case. But *Sherman* v. *Elder* expressly decides that the wife in this case could make a valid assignment of her claims, and that the action is well brought by the present plaintiffs.

I think this judgment should be reversed, and that there should be a new trial, with costs to abide the event.

All the judges concurred in the foregoing opinions, except DENIO, Ch. J., who dissented.

Judgment reversed, and new trial ordered.