CAROLINE ABBEY, Respondent, *v.* ABRAHAM A. DEYO, Jr., Sheriff of Ulster County, Appellant.

44 343
115 138
44 343
123 575

It is now well settled that a married woman may purchase property and carry on business on her separate account, through her husband, as her agent.

The fact that the services of the husband are given without compensation, other than his support, which she provides out of the income of the business, does not impair her title to the property or give his creditors any interest in the profits.

The property of a debtor belongs to his creditors, but his time, talents and industry, are at his own disposal and his creditors have no claim thereto. Whether the business is in fact the wife's and the husband merely her agent, or the agency a mere cover for the husband's business, to keep his property from his creditors, there being evidence, however slight, tending to each conclusion, is a question of fact to be submitted to the jury.

(Argued January 9; decided May 1, 1871.)

APPEAL from an order of the General Term of the Supreme Court in the third judicial district, affirming a judgment entered upon a verdict in favor of the plaintiff.

This was an action of replevin, brought to recover feed, flour, grain, &c., belonging to the plaintiff and levied on in November, 1861, by execution against the husband of the plaintiff. Upon the first trial the plaintiff was nonsuited. A new trial was granted by the General Term (reported 44 Barb., 374), upon which a verdict was rendered for the plaintiff, and judgment entered thereupon was affirmed by the General Term. The defendant appealed to the Court of Appeals. The facts sufficiently appear in the opinion of the court.

*M. Schoonmaker*, for the appellant.

*S. L. Lawton*, for the respondent.

HUNT, C. The plaintiff alleges that she carried on the flour and feed business in the summer of 1861, under the name of Stephen Abbey, agent. Her husband she alleged to be her agent, and that as such he bought and sold and carried on the business for her. It was proved that, in making the purchases at Albany, the husband stated to the vendors that he was the agent of the plaintiff and that the goods were charged to him as agent.

The defendant insists that there was no evidence that the plaintiff had employed or authorized her husband to make the purchases or transact business for her, and that the court should have so instructed the jury.

On this point the proof was that Stephen Abbey professed to act for the plaintiff; the son testified that he knew of his mother being engaged in business, commencing in 1861, and that she purchased goods in Albany; that he was the book-keeper and saw the bills; that his mother often spoke to him about his remaining at home and remaining in the business; she often spoke to him about being in her employment, and that he had his board and clothes for his services, and that suits in relation to the business were brought in his mother's name.

Mr. Avery testified that he sold goods to the plaintiff in 1861, consisting of flour, corn and oats; and that Stephen was irresponsible, and had judgments against him, and that he gave the credit to the plaintiff. He identified the goods as a portion of those in question here; and he testified that the plaintiff paid him $200 on account of the goods purchased of him. This payment was made by the check of "S. Abbey, Agent." He further says that he called on the plaintiff for the money, at the house, when both she and her husband were present, and that he gave the check for $200. If Mrs. Abbey, the plaintiff, had been sued by the Albany merchants for the price of the goods thus sold to her, and the above evidence had been given to prove the agency, it would have been quite satisfactory. No jury could have failed to find that her husband was her agent in purchasing the goods. In addition to this, it was found that the family consisted of the husband, the wife, who is the present plaintiff, two sons, one of whom was the clerk already mentioned, a daughter and an aunt, all living together, as I infer, near to the place where the business was carried on. There was no contradictory evidence on this point of agency, and I think it warranted the inference that the husband was authorized by the wife to transact the business in question, and at the time of making the purchases.

The act of March, 1860 (Laws 1860, chap. 90, page 157), in its second section, provides as follows: "§ 2. A married woman may bargain, sell, assign and transfer her separate

personal property, and carry on any trade or business, and perform any labor or service, on her sole and separate account; and the earnings of any married woman, from her trade, business, labor or services, shall be her sole and separate property, and may be used and invested by her in her own name."

In *Knapp* v. *Smith* (27 N. Y. R., 278), Judge DENIO says, that a married woman may cultivate her land and manage her personal property by means of any agency which any other owner of property might employ, and that the produce thereof and the increase of stock would be hers. The agency thus referred to in the case before him was that of her husband.

In *Gage* v. *Dauchy* (34 N. Y., 293), it was held that a wife might employ her husband to transact her business, and although no agreement for his compensation was made between them, that the property would not thereby become subject to the payment of his debts.

In *Buckley* v. *Wells* (35 N. Y. R., 518), it was decided that a married woman could manage her separate property through the agency of her husband, and was entitled to the profits of a mercantile business, conducted by her husband in her name, when the capital was furnished by her, and he had no interest but that of an agent. It was further held that the application of an indefinite portion of the income to the support of her husband, did not impair the wife's title to the property. While the law does not require the wife to support the husband, it does not prohibit her from doing so; and where the property which is the subject of dispute does not come from him, this circumstance furnishes no evidence of fraud.

In arguing this point the appellant's counsel insists that the services, the time and talents of the husband are valuable, and he has no more right to give them to his wife, as against his creditors, than to give to her his property to their prejudice. The one, he says, is as much their property as the other. This argument is entirely unsound. The property of a debtor, by the laws of all commercial countries, belongs

to his creditors. He must be just before he is generous. He must pay before he gives. Not so with his talents and his industry. Whether he has much, or little, or nothing, his first duty is the support of his family. The instinctive impulse of every just man holds this to be the first purpose of his industry. The application of the debtor's property is rigidly directed to the payment of his debts. He cannot transport it to another country, transfer it to his friend, or conceal it from his creditor. Any or all of these things he may do with his industry. He is at liberty to transfer his person to a foreign land. He may bury his talent in the earth, or he may give it to his wife or friend. No law, ancient or modern, of which I am aware, has ever held to the contrary. No country, unless both barbarous and heathen, has ever authorized the sale of the person of a debtor for the satisfaction of his debts.

The judge charged the jury that they were to find whether the plaintiff was in fact carrying on business herself, her husband acting merely as her agent, or whether the business was in fact her husband's, and the agency a form or device for carrying on business with his own means and her son's services. If the former, he charged them that the wife could hold the property. If the latter, he charged them that the property belonged to the creditors and the wife must be defeated. This was the precise question for the jury to decide, and it was clearly and fairly placed before them. Their decision is conclusive here.

An objection was made to certain evidence given by Mr. Judson. He testified that he had sold goods in 1861 to the plaintiff through her agent; that the credit was given to Mrs. Abbey; the goods were delivered on the boat; that he recognized the flour and the meal; that they were to be paid for in fifteen or twenty days, and that the goods on the boat were not paid for.

The evidence that the goods were not paid for was objected to by the defendant as immaterial and irrelevant. If Mr.

Judson had desired to recapture the goods, this evidence would have been important. Upon the question of title between Mrs. Abbey, the plaintiff, and the creditors of her husband, it could have no possible effect for good or for evil. It was conceded that title had passed upon the sale by Mr. Judson, and that the property was in Mrs. Abbey or in her husband. The question was merely in which of them was it vested. On that question the payment to Mr. Judson or the non-payment could have no possible effect. Its admission, therefore, furnishes no ground for setting aside the verdict. (*People* v. *Kennedy*, 39 N. Y. R., 245.)

Judgment should be affirmed with costs.

EARL, C. There was some evidence tending to show that the plaintiff carried on the business through her husband as her agent, and that all the property was purchased by her and in her name through her husband as her agent. Whether the business was thus carried on and the property thus purchased really and in good faith for her, or whether it was all a mere cover and really for her husband, to keep his property out of the reach of his creditors, were questions of fact fairly submitted to the jury, and their verdict for the plaintiff is, as to these questions, final and conclusive. Since the passage of the " act concerning the rights and liabilities of husband and wife" (chap. 90, Laws of 1860), there can be no longer a question that a married woman can carry on business on her sole and separate account, and that in such business she can purchase property for cash or upon credit, and that she can manage her business and property through her husband as her agent. (*Knapp* v. *Smith*, 27 N. Y., 277 ; *Buckley* v. *Wells*, 33 N. Y., 518 ; *Gage* v. *Dauchey*, 34 N. Y., 293 ; *Merchant* v. *Brunell*, 3 Keyes, 539 ; *Draper* v. *Stouvenel*, 35 N. Y., 507 ; *Sammis* v. *McLoughlin*, 35 N. Y., 647.)

The creditors of an insolvent have no claim upon his services. They cannot compel him to work and earn wages for their benefit, and hence he does not defraud them if he chooses to give away his services by working gratuitously for

Statement of case.

another.   The husband may, therefore, in the management of his wife's separate business or property, work for her, as any other person might, without any compensation, and his creditors would not thereby gain any rights against the wife or her property and would have no legal right to complain.

This judgment should, therefore, be affirmed with costs.

All concur.

*Judgment affirmed with costs.*