THIRD NAT. BANK OF BUFFALO *v.* GUENTHER *et al.*

(*Superior Court of Buffalo, General Term.*   July 13, 1888.)

1. HUSBAND AND WIFE—AGREEMENT OF WIFE TO SUPPORT FAMILY—VALIDITY.

A contract between husband and wife that, in consideration of his acting as her agent in the management of her separate estate, she would, out of her own means, support their family, relieving him from all obligation in that respect, is void as to her creditors.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES—HUSBAND AND WIFE.

An insolvent married woman, carrying on business in her own name, made an assignment for the benefit of creditors, preferring her husband in the sum of $7,000 alleged to be due him as unpaid salary for his services as her agent in conducting her business for seven years. It was claimed that she had employed him at the sum of $1,600 per year, and the further agreement to relieve him from supporting the family, which was worth about $2,000 or $2,500 per year. The services of the husband, as such agent, were shown to be worth no more than $1,600 per year. There was drawn from the business upwards of $10,000 for living expenses, and $2,000 for his salary. The wife had no business experience, and was ignorant of the condition of her affairs, leaving everything to her husband. *Held,* that such assignment was made with intent to hinder, delay, and defraud creditors of the wife, and was, as to them, void.[1]

3. SAME—EVIDENCE—BOOKS OF ASSIGNOR'S PREDECESSOR.

The business in which such debtor was engaged, having been carried on by her father and husband, whom she succeeded, under the residuary clause of her father's will and an agreement with her husband, the books kept by the firm prior to her succession are proper evidence to prove the condition of the business at the time she became the owner of it.

4. SAME—ACTIONS TO SET ASIDE—PROOF OF INSOLVENCY.

In an action to set aside such assignment, evidence of judgments recovered against the debtor is admissible to prove her insolvency before making the assignment, during the time she was paying the living expenses of the family under the alleged agreement with her husband.

5. SAME—ACTIONS TO SET ASIDE—ESTOPPEL TO DENY VALIDITY.

The facts that the assignors of the judgment upon which plaintiff's action to set aside such assignment is based, who were preferred creditors thereunder, had consulted with the assignees with reference to the assignment, and the legal proceedings attacking the same, and had contributed towards the expenses of an appeal by the assignees from attachment proceedings by attacking creditors, to which they were not parties, would not estop them nor their privies from maintaining such action; they being ignorant of the fraud in the preference of the claim of the husband, and doing nothing by which the assignees might be misled.

TITUS, J., dissenting.

Appeal from judgment on report of referee.

Prior to 1874 one Henry T. Gillett carried on business as a wholesale and retail liquor dealer at Buffalo. For a portion of the time his son, Albert A. Gillett, and John G. Guenther, were partners with him, under the firm name of Henry T. Gillett & Son. Albert A. Gillett died, and the business was then conducted by the surviving partners, each having an equal interest. In November, 1874, Henry T. Gillett died, leaving a will, in which, after making several bequests, he bequeathed to his daughter, Georgiana J. Guenther, the residue and remaider of his estate. The business continued to be carried on by John G. Guenther, the husband of Georgiana, as surviving partner, until May 1, 1876, when, as executor and surviving partner of Henry T. Gillett, he turned over all the property and business of the firm to Georgiana. She, absolving him from all liability, assumed the debts and liabilities then existing, and also the payment of the legacies remaining unpaid. After the transfer to her of said property and business, she caused to be filed in the clerk's office of Erie county a certificate, stating that she was the person now and

---

[1] For a full discussion of the question of preferences in assignments for benefit of creditors, see the note to Talbott's Assignee v. Ewalt, (Ky.) 7 S. W. Rep. 631. See, also, Moody v. Carroll, (Tex.) 8 S. W. Rep. 510. Respecting the subject of conveyances between husband and wife, and when such conveyances are fraudulent as to creditors, see Buhl v. Peck, (Mich.) 37 N. W. Rep. 876, and note; Sims v. Moore, (Iowa,) 38 N. W. Rep. 874; Bornell v. Gibson, (Ind.) 16 N. E. Rep. 130.

v.1N.Y.s.no.11—48

hereafter dealing under the firm name of Henry T. Gillett & Son; that her place of abode was in Buffalo, N. Y.; and that John G. Guenther was her agent for the carrying on of said business. At the time of the consummation of this arrangement, she entered into a verbal contract with her husband whereby she agreed to pay, in consideration of his carrying on the business as her agent, the sum of $1,600 a year, and further agreed to pay and assume all the expenses of supporting the family of the said John G. Guenther during said time. The reasonable and proper living expenses of the said family were from $2,000 to $2,500 a year. Under this agreement the business was carried on from said 1st day of May, 1876, to the 9th day of May, 1883, during which time there was paid from said business, for living expenses of the family, in the aggregate, upwards of $10,000; the exact amount not being stated. There was also drawn by John G. Guenther, to apply upon his salary as agent, the sum of $2,031.38. The aggregate sum drawn from the business, and paid as family expenses, exceeded the aggregate sum of $1,600 per year, agreed to be paid said Guenther as salary for his services as agent. Georgiana J. Guenther, during the time the business was carried on by her husband as agent for her, was entirely unacquainted with the details or methods by which it was conducted, or whether it was profitable or unprofitable. She was without business experience, and the sole management devolved upon her husband. The business was so conducted by her husband until the 8th day of May, when it was discovered that Georgiana J. Guenther was insolvent, and unable to pay her debts in full; and upon said 8th day of May, she made and executed a general assignment, for the benefit of her creditors, to John L. Romer, as assignee. In and by said assignment she preferred her husband as a creditor in the sum of $7,000, for unpaid salary arising out of his employment as agent as aforesaid. An action was brought to declare said asignment void, as tending to hinder, delay, and defraud creditors. The action was referred, and the referee found that the said preference of $7,000 was fraudulent, and directed judgment declaring said assignment void.

Argued before BECKWITH, C. J., and HATCH and TITUS, JJ.

*H. C. Day* and *John L. Romer,* for appellants. *Adelbert Moot,* for respondent.

HATCH, J. The question which is here presented for determination, is, can the husband and wife, by contract between themselves, change the rights, liabilities, and obligations which inhere to the marital relation. It is clear that no such power existed at common law. *Beach* v. *Beach,* 2 Hill, 260; 1 Shars. Bl. Comm. 441, 442; 2 Kent, Comm. (12th Ed.) 129. Among the liabilities thus created by the marital relation, always existing, and which still exists, is the obligation resting upon the husband to support and maintain the wife; and this, without regard to whether the wife is possessed of a sole and separate estate or not. 2 Kent, Comm. (12th Ed.) 146; *Maxon* v. *Scott,* 55 N. Y. 247–249, 62 Barb. 531; *Coleman* v. *Burr,* 93 N. Y. 17–24. The unity of the husband and wife has not been destroyed by the several acts which have been passed, removing very largely her common-law disabilities, except so far as the statutes expressly provide. Accordingly it has been held that a deed running directly from the wife to the husband was ineffectual to pass title, (*White* v. *Wager,* 25 N. Y. 328;) that by conveyance of land to the husband and wife, their heirs and assigns, each became seized of the entirety, (*Bertles* v. *Nunan,* 92 N. Y. 152;) that the husband and wife are not authorized to form a copartnership for the purpose of trade or business, (*Kaufman* v. *Schoeffel,* 37 Hun, 140.) These authorities clearly show that only to the extent to which the common-law disabilities have been removed, may the husband and wife contract. The intent of the legislature to still retain the oneness of the husband and wife is made more manifest by the most recent legislation, as the statute of 1884 removed all disabilities with respect to contracts made by

the wife, except contracts between husband and wife, which were expressly excepted. The obligation resting upon the husband to support and maintain a wife not being modified or abrogated by any statute, it follows that no legal contract with the wife can be entered into which will relieve him from such obligation. *Nash* v. *Mitchell*, 71 N. Y. 199; *Perkins* v. *Perkins*, 7 Lans. 19.

It is claimed, however, that the several acts, so far as the same relate to the separate estate of the wife, have removed all disability with respect to her dealings therewith; and that this contract, relating alone to the management of her sole and separate property, and in her sole and separate business, can be upheld, for the reason that she may do with such property as she sees fit. It is no longer open to debate that a married woman, by virtue of the enabling statutes, may carry on a sole and separate business, is entitled to all the benefits arising therefrom, and subject to all the liabilities attaching thereto. She may transact business in person or through an agent, and she may employ her husband to act for her as such agent. *Knapp* v. *Smith*, 27 N. Y. 277; *Abbey* v. *Deyo*, 44 N. Y. 343; *Owen* v. *Cawley*, 36 N. Y. 600; *Baum* v. *Mullen*, 47 N. Y. 577　So far as her separate estate is concerned, she has the power to dispose of it, for any legal purpose, to the fullest extent to which any other person has. In this respect the statutes have swept away the common-law disability. *Tiemeyer* v. *Turnquist*, 85 N. Y. 516; *Buckley* v. *Wells*, 33 N. Y. 518. Such right, however, to acquire and use property, carries with it corresponding and correlative obligations. As she can purchase property, so the obligation is imposed to pay. *Cashman* v. *Henry*, 75 N. Y. 103. Where she transacts business through an agent, she is estopped by his acts where, doing the act in person, she would be estopped. *Noel* v. *Kinney*, 106 N. Y. 74, 12 N. E. Rep. 351; *Bodine* v. *Killeen*, 53 N. Y. 93. She is liable for the frauds of the husband perpetrated in the management of her estate, although without knowledge of the fraud, and acting innocently. *Warner* v. *Warren*, 46 N. Y. 228; *Krumm* v. *Beach*, 96 N. Y. 398. The cases are uniform in holding that her right to deal with property as if unmarried attaches to it all the incidents and obligations that attach to like rights exercised by other persons. The authorities which hold that she may use, consume, keep, give away, or sell property of which she is possessed, do not hold or say that she may so use it if she thereby deprives or defrauds another of what she is legally under obligations to render. The sense in which such language must be understood is that she may so use her property when such use does not thereby deprive others of what is their due, and she is untrammeled by obligations which good faith requires to be discharged. She may not then give away, destroy, consume, or keep property which she has acquired. Her disabilities removed, she drops into the category of legal responsibility. She may no more commit a fraud in the disposition of her property than her husband can in the disposition of his property. What will taint his transaction will equally tarnish hers. This right, therefore, which the statutes have conferred upon her, do not authorize her to make illegal contracts, nor do they dispense with any requirement which the law imposes with respect to the ownership of property. So that it is not accurate to say that she may deal with her property as she sees fit, or consume it in the payment of what the husband is legally liable to pay, if thereby the rights of creditors are affected. It is, however, claimed that, if this contract to pay the household expenses could not be enforced, yet, it not being a contract *malum in se*, having been executed, it cannot now be attacked. It may be conceded, for present purposes, that, as between the parties, the wife, having received the benefit of the husband's services, could not recover back from him what she had paid as family expenses; and this, upon the principle of estoppel. He was not bound to work for her in the management of her separate business; but, having done so upon her agreement to relieve him from a marital obligation, the law would not allow her to repudiate the contract after having received the benefits.

But such is not the exact case here. While the wife may not take advantage of the executed void agreement, creditors who are prejudiced thereby may. They had the right to assume, when dealing with the defendant, that her property would not be absorbed by the husband in right of any void agreement, or that her property would be used in the payment of obligations legally resting upon the husband to pay, while he, at the same time, exhausted her estate by accumulating salary. Such dealing misleads the creditor, and opens wide the door for perpetrating the grossest frauds. I understand this to be, in part, the principle which controlled the decision in *Coleman* v. *Burr*, 93 N. Y. 17, and *Whitaker* v. *Whitaker*, 52 N. Y. 368. The husband could no more contract to be relieved from supporting his wife and family here than the wife could contract for payment for service which she was bound to render in the *Burr Case*. In both the agreement was in fraud of the rights of creditors. It was conceded, and the referee found, upon the trial, that the services of the husband, in carrying on this business, were fairly and reasonably worth the sum of $1,600. The inference which arises from such concession and finding is that they were worth no more than that sum. It was further conceded and found that the reasonable and proper living expenses of the family were from $2,000 to $2,500 a year. Thus we have the husband receiving compensation at the rate of from $3,600 to $4,100 a year for services concededly worth but $1,600 a year. Seven years of such method equals an assignment; and we have, as a final result, household expenses, or, more accurately speaking, obligations of the husband, paid by the wife, from $14,000 to $17,500; paid upon salary, $2,031.38; making a total paid of from $16,031.38 to $19,531.38 to which must be added balance of salary remaining unpaid, amounting to the sum of $9,168.62,—making a grand total, which the husband became entitled to receive for his seven years' service of from $25,200 to $28,700. And this for services confessedly worth but $11,200. Although the balance remaining unpaid was $9,168.62, the husband is only found preferred for $7,000. Nothing more is needed to show the fraudulent character of such an assignment, either as an inference created by law or as a matter of fact. *Coleman* v. *Burr*, *supra*, 31. The longer such a contract was executed, the more deplorable became the condition of the creditors. Good faith and fair dealing towards them require that the husband shall be chargeable with what he was legally under obligation to pay. With this done there remains no debt to prefer. We therefore think the referee right in deciding this assignment fraudulent and void, as hindering, delaying, and defrauding creditors.

There was no error committed in the admission of the judgment rolls in evidence. They were proper, as showing the insolvency of Mrs. Guenther at and previous to the making of the assignment, and while she was paying the living expenses of her husband's family. So far as the admissions contained in the answer are concerned, if we treat them as technically inadmissible, they in nowise injured or prejudiced the defendants, as Mrs. Guenther and her husband, on behalf of the defendants, testified to substantially the same facts as matter of defense. *Bardin* v. *Stevenson*, 75 N. Y. 167; *Foote* v. *Beecher*, 78 N. Y. 155. The same is true of the books kept by the firm prior to Mrs. Guenther's succession to the business. They were admissible as showing generally the condition of the business at the time of the transfer.

It is also claimed that E. N. Cook & Co., through whom the plaintiff makes title to the judgment against Georgiana J. Guenther, and which forms, in part, the basis of right to maintain this action, had ratified and confirmed said assignment, and in consequence thereof the plaintiff is estopped from maintaining this action. The facts relied upon to sustain this position are found in the testimony of the assignee. Cook & Co. were preferred creditors in the assignment; and, when the attachments were granted, they consulted with the assignee relative to the motions which were made to vacate them,

and also with respect to the appeal which was taken from the order denying the motion to vacate. They also contributed money towards the expense of printing papers on appeal. They were not, however, parties to the motion, nor was the motion made in their behalf. It does not appear that they were possessed of any facts showing, or tending to show, fraud in the preference of John G. Guenther. There could be no ratification without knowledge, and consequently no estoppel. *Brown* v. *Goodwin*, 75 N. Y. 409; *Royce* v. *Watrous*, 73 N. Y. 597. It does not appear that the acts of Cook & Co. have in any manner changed the *status* of the parties, by misleading them or otherwise. The case lacks the essential elements necessary to create an estoppel. *Constant* v. *Society*, 53 N. Y. Super. Ct. 170; *White* v. *Ashton*, 51 N. Y. 280; *Haydock* v. *Coope*, 53 N. Y. 68.

We find no error in the determination of the referee. The judgment appealed from should therefore be affirmed, with costs.

BECKWITH, C. J., concurs.   TITUS, J., dissents.