JOHN L. ROMER, AS ASSIGNEE OF GEORGEANNA J. GUENTHER, APPELLANT, *v.* HARRIET N. KOCH, AS ADMINISTRATRIX, ETC., OF HARRY H. KOCH, DECEASED, RESPONDENT.

*Right of a wife to employ her husband to carry on her business — she may agree to pay a salary, and also to pay all the expenses of supporting the family.*

In an action, brought by an assignee for the benefit of creditors, to recover for the conversion of certain property alleged to have belonged to his assignor, the defendant, a sheriff, alleged that he took the property by virtue of an attachment and execution against the assignor and denied the plaintiff's title, claiming that the general assignment made by the plaintiff's assignor was void by reason of a preference of $7,000, given by such assignor to her husband.

In 1874, while the assignor's father and her husband were carrying on business as partners, the father died leaving his property to his daughter. The husband, as surviving partner, carried on the business until May, 1876, when he transferred his interest in the business to his wife, who employed him to take charge of and carry on the business in the same firm name, and, in consideration of his services in so doing, promised and agreed to pay him the sum of $1,600 a year during the time he did so; and, also, further agreed that she would assume and pay all the expenses of supporting the family of her husband during said time. Under this agreement the husband carried on the business until May, 1883, when the assignment was made.

The referee found that during that time the assignor's husband drew from the business upwards of $10,000 to pay the living expenses of the family, and the sum of $2,031.38 to apply upon his salary; that the aggregate amount of these two sums exceeded the salary agreed to be paid, and that the wife was not indebted to him at the time the assignment was made.

*Held,* that the agreement of the wife to assume and pay the family expenses was not void or fraudulent as to her creditors.

That, assuming that the agreement did not impose upon her the legal duty to do so, she was at liberty to observe and carry out such agreement; and if she did pay such expenses, or permit her husband, pursuant to it, to pay them with her funds, no liability arose on that account against him for reimbursement.

That the finding of the referee that there was nothing due from the assignor to her husband for his salary was not justified by the evidence, and that the assignment was not fraudulent as to her creditors.

*Third National Bank of Buffalo* v. *Guenther* (17 N. Y. St. Rep., 403) distinguished.

APPEAL from a judgment in favor of the defendant, entered in Erie county on the report of a referee.

The action was brought to recover for the alleged conversion of certain personal property to which the plaintiff, as assignee of

Mrs. Guenther, for the benefit of her creditors, claimed title. The defendant, by way of justification, alleged that he was sheriff and took the property by virtue of the attachment and the execution against her property, and denied the plaintiff's alleged title. The original defendant died during the pendency of the action and the present defendant was substituted as such. The referee directed judgment for the defendant on the merits.

*J. L. Romer*, for the appellant.

*Adelbert Moot*, for the respondent.

BRADLEY, J. :

The question presented is whether or not the general assignment, made by Mrs. Guenther, for the benefit of her creditors, to the plaintiff, was valid as against such creditors. The referee determined that it was void, and rendered so by the preference given by it of $7,000, in behalf of John G. Guenther, her husband, for services. Her father, Henry T. Gillett, and his son were for many years engaged in business at Buffalo, in the firm name of Henry T. Gillett & Son, and her husband was in their service as clerk. The son died and Guenther became interested as a partner in the business, which was continued for a time until the father died in 1874. He, by his will, gave his property to Mrs. Guenther. The husband, as surviving partner, carried on the business until May, 1876, when he transferred the business and property to his wife, and, as the referee found, she then employed him to take charge of and carry on the business in the same firm name, " and, in consideration of his services in so doing, she promised and agreed to pay him the sum of $1,600 a year during the time he should so carry on said business for her ; and she also further agreed that she would assume and pay all of the expenses of supporting the family of said John G. Guenther during said time." The business was conducted by him until in May, 1883, when the assignment was made to the plaintiff. It covered the property in question. It appears that the family and living expenses were from $2,000 to $2,500, annually, during that time. And the referee found " that during said time John G. Guenther drew from the said business so carried on by him, as agent for his wife, upwards of $10,000, in the aggregate, to pay the living expenses of the family ;

that during the same time he drew from said business, in the aggre-. gate the sum of $2,031.38, to apply upon his salary as such agent; that the aggregate, sum so drawn from said business exceeds the aggregate annual salary of $1,600, so agreed to be paid to said John G. Guenther for his services as such agent." And, thereupon, the referee found and determined that his wife was not indebted to him in any sum at the time of making the assignment; that the preference in it to him of $7,000 for services was wholly without consideration, and that the assignment was void. It is not claimed, on the part of the plaintiff, that the wife was indebted to the husband otherwise than for his services in carrying on the business for her during the period of the seven years next preceding the time of the assignment to the plaintiff. But it is contended that the moneys paid by him for his family expenses out of the business of the assignor were not chargeable to him against his stipulated salary. The referee has not found, and evidently did not intend to find, that the agreement of the wife was to assume and pay those expenses as compensation for the services of the husband. He did find, and such was the concession at the trial, that the services of Guenther were reasonably worth the sum of $1,600 per year. The entire agreement was made at the same time, and, by that portion relating to the family expenses, the husband may have been induced to undertake to carry on the business of his wife at the salary mentioned. So far as appears Mrs. Guenther was then solvent. And the husband, apparently pursuant to the agreement, paid such family expenses out of the funds of his principal, of which he had the charge as her agent. This had been done before the assignment was made. The defense rests upon the contention that this agreement to assume and pay the family expenses was void, and, therefore, gave no support to the claim that they were chargeable to the wife so as to preserve, as against her creditors, the husband's claim for his salary. While the common-law unity and relation of husband and wife have been so modified by statute as to enable the latter to transact business in her own right and upon her own account, her disability is removed so far only as the statute permits. (*Bertles* v. *Nunan*, 92 N. Y., 152.) She may purchase, hold and own property as effectually as if she were a *feme sole*, and may, in the use of, or with it, carry on business personally or through

agencies employed, by her, and her husband may become her agent for that purpose. (*Merchant* v. *Bunnell*, 3 Keyes, 539; S. C., 3 Abb. Ct. App. Dec., 280; *Knapp* v. *Smith*, 27 N. Y., 278; *Buckley* v. *Wells*, 33 id., 518.)

It seems to follow that the wife may employ her husband to act as her agent in the transaction of her business. No promise to pay him for services performed for her will be implied. (*Abbey* v. *Deyo*, 44 N. Y., 343; *Webster* v. *Hildreth*, 33 Vt., 457; 78 Am. Dec., 632.) And although he may not be able to maintain an action at law against his wife upon her express agreement to pay him a stipulated price for his services (*Perkins* v. *Perkins*, 62 Barb., 531), it has been held that a debt in his behalf is, nevertheless, created against her for services performed in her business by him under such an agreement, which may be recovered by a third person who has succeeded to his right to the claim. (*Kingman* v. *Frank*, 33 Hun, 471.) The view of the court in the case last cited was, that the contract of employment and for payment was lawful, and that the disability of the husband to sue upon it at law had relation to the remedy only. And, therefore, any other person who may have acquired the right to the debt due from the wife to the husband, could maintain an action against her personally for its recovery. That proposition adopted leads to the conclusion that the agreement of Mrs. Guenther to pay her husband the stipulated salary for his services in carrying on her business, was effectual to create an indebtedness to him for the amount earned, the payment of which, so far as it remained undischarged, she could lawfully provide for and prefer in her assignment. The duty was upon the husband, by virtue of his relation as such, to provide for his family, and he could not, by a mere executory agreement with his wife, change their legal marital duties and relations. (*Beach* v. *Beach*, 2 Hill, 260; *Coleman* v. *Burr*, 93 N. Y., 17.)

We shall, therefore, for the purposes of this review, assume that the agreement of Mrs. Guenther to pay the family expenses, did not impose upon her the legal duty to do so. She was, however, at liberty to observe and carry out such agreement; and if she did pay such expenses, or permit the husband, pursuant to it, to pay them with her funds, no liability to her arose on that account against him for reimbursement. (*Fuller* v. *Lumbert*, 6 East. Rep.,

147.) At the time this agreement was made, and, so far as appears, at the time the moneys were paid by the husband, as her agent, for the family expenses, the assignor was in a solvent condition, and no creditors could then criticise the use she made of her property. (*Carr* v. *Breese*, 81 N. Y., 584.) She was then at liberty to do with it as she pleased, to use it for the benefit of her husband or permit him to do so, without consideration or liability on his part. (*Jaques* v. *Methodist Ep. Church*, 17 Johns., 549, reversing 1 Johns. Ch., 450; *Tiemeyer* v. *Turnquist*, 85 N. Y., 516, 522.) The purpose of the agreement, as found by the referee, was to devote so much of her property to the payment of the family expenses as was necessary for that purpose, in addition to the salary which the husband should receive for his services. The reason for making the agreement, further than appears by its terms, is not important here, as it is not found or claimed that it was produced by any unfair means on the part of the husband, or that it was not the voluntary act of the wife, and it may be said that she had considerable property, while his means were quite limited. The husband, by the express agreement of employment by the wife, became her agent in the transaction of her business. He had the entire charge of it and was her disbursing agent. We have assumed that the wife was at liberty, so far as it remained unexecuted, to at any time revoke her promise, by which she had agreed to assume and pay the family expenses, and the authority given by it for the appropriation of her funds to that purpose. She, however, did not do so, but, on the contrary, those expenses were paid by the husband with her means, pursuant to the agreement, apparently with her continued approbation and consent. And the referee has found that the family expenses so paid were reasonably incurred. It is suggested that the use of the money of the wife by the husband, for that purpose, was not authorized by the agreement. But she placed her business in the charge and management of her husband, and made him her disbursing agent, and it would seem that, until there was some interruption on her part, the use so made for that purpose of her funds, with her current approbation, must be deemed an application of them pursuant to the agreement, and, in practical effect, by her, to the payment of such family expenses.

The existence of the agreement was an important fact, to char-

acterize the understanding of the parties to it, attending such disbursements of the moneys of the wife. Nothing appears to qualify the purpose expressed by such agreement in that respect, or which permits the conclusion that such expenses so paid were not treated as in performance of it. And upon the facts as presented by the findings of the referee, and in view of the evidence upon which they were based, the husband does not appear chargeable with the amount so paid. And, therefore, no reason is seen for the application of the amount of such expenses upon or by way of abatement or extinguishment of the salary of the husband for his services performed. A different view might be taken if the payment of such expenses by the husband, to make it her payment of them, had required ratification by her after the liabilities of the wife rendered her insolvent, or after the debt upon which the proceedings and process, alleged in justification, were founded and accrued. But, inasmuch as that is not the situation, the defendant cannot effectually assert that the property of the assignor was thus appropriated in fraud of her creditors. There is no finding that the agreement to pay the family expenses, or that the appropriation of the funds of the wife pursuant to it, was made for the purpose of defrauding her creditors. The proposition of fact upon which the determination of the referee was placed was that the preference to the husband had not the support of an indebtedness of the assignor to him. If that fact was correctly found by the referee, this result properly followed. (*Planck* v. *Schermerhorn*, 3 Barb. Ch., 644.) For the reasons before given we are unable to see how that conclusion of fact was permitted.

The rule applicable to the construction of general assignments for the benefit of creditors is no different than that applied to other written instruments. And the burthen was upon the defendant to establish the invalidity of the assignment in question. (*Crook* v. *Rindskopf*, 105 N. Y., 476.)

The finding of the referee that there was nothing due from the assignor to her husband, at the time of the assignment, upon his salary for services, we think, in view of the other facts found by him, was not justified, and, therefore, the conclusion that the assignment was made with the intent to defraud the creditors of the assignor was not supported. Since this opinion was written our attention has

been called to case of the the *Third National Bank of Buffalo* v. *Guenther* (17 N. Y. St. Rep., 403), recently decided in the Superior Court of Buffalo, in which a judgment declaring this assignment void as against the creditors of the assignor was affirmed. We are not advised by the report of the case that the facts there found by the referee were the same as here, and assuming that they were different in some material respects, the reasoning leading to and permitting the result reached in that case is not necessarily applicable to the facts found by the referee as represented by the record in the case at bar, and, therefore, it may be that the two cases in that manner are distinguishable.

The judgment should be reversed and a new trial granted. costs to abide event.

BARKER P. J., and HAIGHT and DWIGHT J. J., concurred.

Judgment reversed and a new trial ordered before another referee, costs to abide event.